## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Jacob Rader,<br>  *Plaintiff,* | )<br>)<br>) | |
| v. | )<br>) | **1:20cv01423 (PTG/IDD)** |
| Mack A. Bailey, Jr. *et al.,*<br>  *Defendants.* | )<br>)<br>) | |

### MEMORANDUM OPINION

In this civil rights suit filed under 42 U.S.C. § 1983, Plaintiff Jacob Rader, a former inmate at Lunenburg Correctional Center ("LCC"), claims that nine LCC officials engaged in a campaign of unlawful retaliation after he continuously exercised his First Amendment rights. Dkt. 45. Eight of those defendants, Warden Mack A. Bailey Jr., Ms. B.L. Holmes, Officer Winslow, Officer Harrison, Officer Richardson, Officer C. Coleman, Mr. A. David Robinson,[1] and Sergeant Jones, have filed a motion to dismiss.[2] Dkt. 55. Plaintiff has received the notice required by Local Civil Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. 57, and he opposes Defendants' Motion, Dkt. 65. In their Motion, Defendants claim that the Third Amended Complaint ("TAC") should be dismissed because (1) Plaintiff failed to administratively exhaust his claims; (2) certain claims have been misjoined; and (3) certain claims fail to state a claim as a

---

[1] Counsel identifies Defendant A. David Robinson as "David A. Robinson." Dkts. 55, 56. The Court assumes this is a typographical error. *See About Us*, Virginia Dep't Corr., https://vadoc.virginia.gov/about (listing "A. David Robinson" as the Chief of Corrections Operations for the Virginia Department of Corrections ("VDOC")) (last visited Mar. 20, 2023).

[2] Counsel for Defendants filed the Motion to Dismiss on behalf of fourteen defendants, Dkt. 55, but Plaintiff named only nine defendants in the operative Third Amended Complaint ("TAC"), Dkt. 45. To the extent the Motion to Dismiss seeks to dismiss claims against Mr. Harold W. Clarke, Mr. Marcus Elam, Kemsy Bowles, Lieutenant Graves, Officer Wesley, and the VDOC (who are not named as Defendants in the TAC) that were brought in previous, non-operative complaints, that portion of the Motion to Dismiss shall be denied as moot.

matter of law. Dkt. 56 at 9–25. For the following reasons, Defendants' Motion to Dismiss shall be granted in part and denied in part.

## I. Background

The Court accepts as true the following facts alleged in the TAC. *See Tabb v. Bd. of Ed. of Durham Pub. Schs.*, 29 F.4th 148, 155 (4th Cir. 2022) ("[A] motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim and not the truth of the facts alleged to support it."). On March 27, 2020, Defendant A. David Robinson, the Chief of Corrections Operations for the Virginia Department of Corrections ("VDOC"), issued a memorandum entitled, "COVID-19-Law-Library-Operation," stating that effective March 30, 2020, offenders would no longer have physical access to the law library. Dkt. 45 at 7. This memorandum remained effective until August 2021, resumed in December 2021, and was still in effect when Plaintiff filed the TAC on March 18, 2022. *Id.* During this period, inmate law library clerks were tasked with conducting legal research on behalf of other inmates. *Id.* at 7–8.

Shortly after Mr. Robinson's memorandum issued, VDOC Director Harold W. Clarke announced a policy on April 1, 2020, requiring inmates to wear face masks at all times unless instructed by a staff member to remove them. *Id.* at 9. The next day, LCC revised this policy so that inmates were only required to wear masks in the dayroom, not in dorm sleeping quarters. *Id.* at 10.

On April 15, 2020, Plaintiff noticed that Defendant Officer Winslow's mask was dangling around his neck, and he asked the officer to wear it properly. *Id.* A few hours later, Officer Winslow levied a false disciplinary charge against Plaintiff for disrupting count. *Id.* at 10–11. During a disciplinary hearing a week later, on April 22, 2020, Defendant B.L. Holmes, the LCC Operations Manager, found Plaintiff guilty of the offense without considering video footage

"proving Plaintiff Rader's innocence." *Id.* at 11.  The conviction was reversed on appeal based on the video footage. *Id.* at 11–12.

On April 16, 2020, Plaintiff filed an informal complaint to report that Officer Winslow had not been wearing his mask properly. *Id.* at 11.  Between April 16, 2020 and January 27, 2021, Plaintiff filed informal complaints and regular grievances reporting that twenty-nine correctional officers were not masking properly. *Id.*

On June 2 and 7, 2020, Plaintiff asked Defendant Officer Harrison to wear her mask while serving food. *Id.* at 12.  She refused, and Plaintiff filed informal complaints and regular grievances to report the two incidents. *Id.*  On June 12, 2020, Officer Harrison and Officer Crowder levied two false disciplinary charges against Plaintiff: one for disobeying an order and another for using vulgar language. *Id.* at 12–13.  During the disciplinary hearing before Defendant Officer Richardson on June 23, 2020, Plaintiff described the hearing as "bullshit." *Id.* at 14.  Officer Richardson found Plaintiff guilty of the two offenses and levied another charge for using vulgar language. *Id.*  Plaintiff contends that the language he used during the hearing does not qualify as vulgar language within the meaning of the VDOC offense code. *Id.*  Nevertheless, Defendant Warden Bailey upheld the charge. *Id.*  Plaintiff appealed and never received a response. *Id.* at 15.

On October 29, 2020, Plaintiff expressed his need to physically access the law library to Warden Bailey and gave him a copy of a show-cause order issued by the Supreme Court of Virginia. *Id.*  Warden Bailey told Plaintiff he could not allow physical access for two reasons: (1) he could not override VDOC policy; and (2) if he made an unsanctioned exception for Plaintiff, he would have to do so for all inmates. *Id.* at 15–16.

On November 10, 2020, Defendant Holmes sent Plaintiff a letter on VDOC letterhead stating that the law library was undergoing renovations to accommodate social distancing.

3

*Id.* at 16.  The letter further advised that during renovations, access to the law library would be limited and directed inmates to submit law library requests on a request form.  *Id.*  Plaintiff asserts that he submitted requests four times, and, each time, it took Ms. Holmes "an average of 18 days to fulfill" the requests.  *Id.*  According to Plaintiff, no renovations were ever made, and he remained unable to access the law library in person.  *Id.*  Plaintiff submitted informal complaints and regular grievances seeking access to the library.  *Id.* at 18.  They were denied, as were his appeals.  *Id.*

On November 29, 2020, Plaintiff filed an informal complaint to report that Officer Wesley had "threatened" Plaintiff when he asked that Officer Wesley wear a mask while serving food.  *Id.* Defendant Officer Coleman, LCC's Institutional Ombudsman, responded on December 1, 2020, telling Plaintiff: "You are not to approach staff to advise, suggest, demand or inform about COVID-19 related issues or how to properly wear their face coverings to avoid confrontations with staff."  *Id.*

Sometime in December 2020, Defendant Holmes confiscated a book, entitled, "The Hearsay Handbook," that Plaintiff's family had mailed to him.  *Id.* at 18–19.  Plaintiff was told that Ms. Holmes confiscated the book because a canine officer had detected that it was laced with synthetic marijuana.  *Id.* at 19.

At the end of December 2020, Plaintiff requested a privileged phone call with his court-appointed attorney.  *Id.*  Instead of arranging for the call, Defendant Holmes changed Plaintiff's call request to a request to block.  *Id.*

On January 15, 2021, after "all" of Plaintiff's informal complaints and regular grievances to access the law library were denied, the VDOC determined that Plaintiff's Level II appeal was "unfounded."  *Id.* at 18.

In February 2021, Defendant Sergeant Jones falsely charged Plaintiff with disobeying an order for not wearing a mask and social distancing in the dorm sleeping quarters, even though LCC inmates were not required to do so. *Id.* at 19–20. In advance of the disciplinary hearing, Plaintiff requested documentary evidence and video surveillance from the dorm. *Id.* at 20. At the hearing, Defendant Officer Richardson viewed only two of the five camera angles Plaintiff had requested. *Id.* at 21. Officer Richardson found Plaintiff guilty of the offense, and Defendant Warden Bailey denied Plaintiff's appeal on April 19, 2021. *Id.*

After Plaintiff received a show-cause order from the court presiding over his federal habeas petition, Plaintiff requested access to the law library on December 24, 2021 and January 19, 2022. *Id.* at 22. Defendant Holmes denied those requests. *Id.* On January 24 and February 13, 2022, Plaintiff filed a written complaint and a regular grievance, respectively, reporting that Ms. Holmes refused to allow Plaintiff physical access to the law library. *Id.* at 22–23.

Defendants construe the TAC as bringing the following fourteen claims:

1. Defendants Bailey, Robinson, and Holmes violated Plaintiff's rights under the First Amendment by denying him access to the law library.

2. Defendants Winslow, Harrison, and Coleman violated Plaintiff's rights under the First Amendment by denying him access to the grievance process.

3. Defendants Winslow, Harrison, Richardson, and Holmes violated Plaintiff's rights under the First Amendment by retaliating against him.

4. Defendant Holmes violated Plaintiff's rights under the First Amendment and harassed Plaintiff by confiscating a legal book that arrived in the mail and by denying him access to a call with his court-appointed attorney.

5. Defendant Richardson violated Plaintiff's rights under the First Amendment by ignoring LCC's mask policy.

6. Defendants Winslow, Harrison, Jones, and Richardson violated Plaintiff's due process rights under the Fourteenth Amendment by writing false disciplinary reports against Plaintiff.

5

7. Defendant Richardson violated Plaintiff's due process rights under the Fourteenth Amendment by denying Plaintiff requested witness and documentary evidence during his institutional disciplinary hearing.

8. Defendant Bailey violated Plaintiff's due process rights under the Fourteenth Amendment by affirming his disciplinary conviction on appeal.

9. Defendants Richardson and Holmes violated Plaintiff's due process rights under the Fourteenth Amendment by ignoring that Plaintiff received disciplinary convictions upon insufficient evidence.

10. Defendants Bailey, Harrison, Richardson, Holmes, and Coleman intentionally inflicted emotional distress upon Plaintiff.

11. Defendants Bailey, Richardson, Holmes, and Coleman were negligent in their treatment of Plaintiff.

12. Defendant Holmes harassed Plaintiff on April 22, 2020 and November 10, 2020.

13. Defendants Bailey, Harrison, and Holmes conspired against Plaintiff.

14. Defendant Holmes harassed Plaintiff on January 24, 2022.

Dkt. 56 at 1–3.

## II. Standard of Review

Defendants move to dismiss under Federal Rule of Civil Procedure 12. Dkt. 55. A plaintiff can survive a motion to dismiss if the complaint alleges sufficient facts "to state a claim to relief that is plausible on its face." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When a complaint is filed by a litigant proceeding *pro se*, the allegations must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Additionally, under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

6

### III. Analysis

*A) Exhaustion*

Defendants urge the Court to dismiss the TAC in its entirety for failure to exhaust administrative remedies. Dkt. 56 at 8–11. They only highlight that in the TAC section concerning Plaintiff's exhaustion of administrative remedies, Plaintiff wrote that he filed a grievance on December 2, 2020 that was deemed unfounded, and his appeal also was deemed unfounded. *Id.* at 11 (citing Dkt. 45 at 3). Defendants contend that dismissal on exhaustion grounds is warranted because Plaintiff filed the original complaint on November 19, 2020, before initiating the grievance process.[3] *Id.* at 10–11. Moreover, Defendants argue, even though Plaintiff references many other informal complaints and regular grievances, he "do[es] not indicate that [he] exhausted his administrative remedies." *Id.* at 11.

"No action shall be brought with respect to prison conditions under section 1983 of [Title 42], or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S. § 1997e(a). Thus, exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 212 (2007). However, an inmate need not "specially plead or demonstrate exhaustion" of administrative remedies in their complaint to avoid dismissal. *Id.* at 216. Instead, the defendant must raise failure-to-exhaust as an affirmative defense. *Id.*; *see, e.g., Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017) ("Exceptions to this rule [as laid out in *Jones*] . . . are rare."). As such, the defendant bears the burden of pleading and proving lack of exhaustion. *Jones*, 549 U.S. at 205, 216. In general, a motion to dismiss filed under Rule 12(b)(6) "cannot reach the merits of an affirmative defense" because such a motion

---

[3] Contrary to Defendants' assertion, the original Complaint was deemed filed as of December 11, 2020, not November 19, 2020. Dkt. 5.

tests the sufficiency of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). It is only in "relatively rare circumstances" that facts sufficient to rule on an affirmative defense will "clearly appear on the face of the complaint." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993)).

Here, dismissal of the TAC in its entirety for failure to exhaust is not warranted at this stage. It is not apparent from the face of Plaintiff's TAC that he failed to exhaust his administrative remedies prior to filing all fourteen claims, as construed and enumerated by Defendants. Dkt. 56 at 1–3. Plaintiff's TAC contains numerous allegations concerning filing "informal complaints" and "regular grievances" related to the claims at issue. Dkt. 45 at 3, 7, 11–12, 18, 21, 22–23. Defendants only point the Court to Plaintiff's allegation that he filed a grievance based on the TAC on December 2, 2020, which was denied, and that after he appealed this decision, the appeal was also denied. Dkt. 56 at 11 (citing Dkt. 45 at 3). Despite listing Plaintiff's fourteen claims against Defendants in their Motion to Dismiss, *id.* at 1–3, Defendants do not clarify which of the fourteen claims are related to Plaintiff's December 2, 2020 grievance. Plaintiff attempts to rebut Defendants' failure-to-exhaust arguments in a lengthy opposition brief, Dkt. 65, to which he has attached forty-one pages of exhibits documenting further details of his efforts to pursue administrative remedies, Dkt. 65-2. Defendants have not responded to Plaintiff's opposition brief nor his exhibits.

Furthermore, the cases cited by Defendants involved courts dismissing the plaintiffs' claims under the PLRA for failure to exhaust administrative remedies on motions for summary judgment, not motions to dismiss. *See, e.g., Pendergrass v. Campbell*, No. TDC-19-0890, 2021 WL 100804, at *4 (D. Md. Jan. 12, 2021) (granting the defendants' motion on the basis that the plaintiff failed to exhaust administrative remedies after construing the defendants' motion as a

motion for summary judgment, rather than a motion to dismiss); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 623–25 (D. Md. 2015) (considering the defendants' motion as a motion for summary judgment as related to the plaintiff's failure to exhaust administrative remedies). Here, the Court is not considering a motion for summary judgment and so, these cases are not analogous to this stage of this litigation.

Because the face of Plaintiff's TAC does not contain all necessary facts for Defendants to prevail on its affirmative defense, and Defendants do not clarify which of Plaintiff's claims and allegations apply to their failure-to-exhaust argument, the Court will deny Defendant's Motion to Dismiss the TAC on the basis that Plaintiff failed to exhaust administrative remedies.

*B) Misjoinder*

Defendants argue that Claims Four and Fourteen, alleging that Defendant Holmes confiscated a legal book, denied Plaintiff a call with his attorney, and harassed him on January 24, 2022 are misjoined and should be severed because the claim arose after Plaintiff originally filed suit and are not part of the access to law library claims advanced in the previous complaints. Dkt. 56 at 11–12. Plaintiff counters that these claims are all linked through a campaign of retaliation he has endured since he began complaining about law library policies. Dkt. 65 at 12–14.

The Court agrees with Plaintiff. Federal Rule of Civil Procedure 20 allows multiple claims against multiple persons when either:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

9

Fed. R. Civ. P. 20(a)(2). "[C]laims arise from the same transaction — and therefore can be joined in the same action — when there is a 'logical relationship' between them." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 325 (4th Cir. 2021). A logical relationship may be found when the proposed complaint alleges a "consistent pattern" of malfeasance among the named defendants. *See Mitchell v. Virginia*, No. 3:22-cv-783, 2023 WL 174957, at *2 (E.D. Va. Jan. 12, 2023) (quoting *M.K. v. Tenet*, 216 F.R.D. 133, 142 (D.D.C. 2002) (concluding that the alleged repeated pattern of obstruction of counsel by the defendants was "logically related" as "a series of transactions or occurrences" aimed at denying effective assistance of counsel to the plaintiffs)). Plaintiff's allegations that Defendant Holmes confiscated the legal book and hindered his ability to meet with his lawyer for retaliatory purposes fits squarely within the pattern of retaliatory conduct alleged throughout the TAC. Accordingly, these claims are not misjoined simply because Plaintiff also claims that this conduct violated other constitutional rights.

Moreover, the Court does not construe Plaintiff's claim about his attorney call as a freestanding First Amendment claim. Instead, the Court construes it as arising under the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI. Because this right includes "the ability to speak candidly and confidentially with counsel free from unreasonable government interference," *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000), the Court concludes that the TAC states a Sixth Amendment claim with respect to the allegation that Defendant Holmes placed Plaintiff's attorney on a block list in addition to stating a claim of retaliation.

10

### C) *Sufficiency of the Complaint*

#### i. *Claim One*

Defendants argue that the Court should dismiss Plaintiff's claim alleging that Defendants Warden Bailey, Mr. Robinson, and Ms. Holmes violated his rights under the First Amendment by denying him access to the law library because the TAC fails to allege that Plaintiff was harmed by specific deficiencies resulting from not being able to physically access the law library. Dkt. 56 at 13–15.

The TAC fails to state a First Amendment access-to-courts claim. First, prisoners have no freestanding First Amendment right to a law library or to legal assistance while incarcerated. *See Lewis v. Casey*, 518 U.S. 343, 350–51 (1996). Instead, they have only a constitutional right to access the courts. *See id.* Thus, to state a claim for relief, Plaintiff must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351.

Plaintiff alleges that on October 29, 2020, he sent Warden Bailey a letter explaining his need to access the law library and enclosed with the letter a show-cause order from the Supreme Court of Virginia. Dkt. 45 at 15. In his opposition brief, Plaintiff elaborates that the show-cause order related to his habeas petition, which the Supreme Court of Virginia ultimately dismissed. Dkt. 65 at 16. Still, the TAC does not connect the dismissal of the habeas petition to LCC's law library policy. Moreover, Plaintiff does not explain the reasons for his habeas petition's dismissal nor the ways in which Plaintiff could have prevented dismissal through his own legal research. Though Plaintiff says he was not allowed to "check out" a book called "Habeas Corpus Checklist," *id.* at 21, he does not allege that he otherwise did not have access to its contents, such as through photocopies.

11

To the extent Plaintiff bases his claim on the allegation that Defendant Holmes took about two and a half weeks to respond to law library requests, that allegation, too, is deficient. To state a claim for relief, Plaintiff must allege that Ms. Holmes "actively interfere[ed]" with Plaintiff's attempts to prepare and file legal documents. *Lewis*, 518 U.S. at 350. Plaintiff has not alleged that Ms. Holmes took so long to respond to his requests to foil Plaintiff's ability to litigate claims in a timely manner. Therefore, the Court will dismiss Claim One.

### ii. Claim Two

Defendants argue that the Court should dismiss Plaintiff's claim that his First Amendment rights were violated when he was denied access to the grievance process because inmates have no constitutional right to participate in a grievance system. Dkt. 56 at 16. Plaintiff does not contest this correct assertion. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (recognizing the "clear rule" that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure") (citing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)). Plaintiff asserts that his claim for denial of his right to access the grievance process is "not literal," and is instead akin to bringing retaliation claims against these defendants. Dkt. 65 at 24–25. Defendants do not argue at this time that the TAC fails to state a retaliation claim against these defendants, and so Claim Two may proceed under a theory of retaliation.

### iii. Claim Three

For this claim alleging that Defendants Officer Winslow, Officer Harrison, Officer Richardson, and Ms. Holmes violated Plaintiff's rights under the First Amendment by retaliating against him, Defendants argue only that Plaintiff failed to exhaust his administrative remedies before filing suit. Dkt. 56 at 8. The Court has already rejected this argument. Therefore, the Motion to Dismiss will be denied as to Claim Three.

12

### iv. Claim Five

Defendants argue that Plaintiff's due process claim based on Officer Richardson ignoring LCC mask policy should be dismissed because the constitutional violation Plaintiff is attempting to allege is unclear. Dkt. 56 at 17. The Court agrees to the extent that it cannot find an allegation in the TAC, outside of the list of claims, Dkt. 45 at 29, in which Plaintiff alleges that there was a specific incident in which Officer Richardson ignored LCC's mask policy. Moreover, a state official's failure to abide by state laws, regulations, or policies, on its own, does not amount to a violation of the Constitution's Due Process Clause. *See Riccio v. County of Fairfax*, 907 F.2d 1459, 1466, 1469 (4th Cir. 1990) (affirming the district court's ruling that alleged violations of the Virginia State Code governing state law enforcement officers are not necessarily a violation of the Due Process Clause, as the federal due process standard "is not defined by state-created procedures"). Thus, even if Plaintiff alleged a specific incident in which Officer Richardson ignored LCC's mask policy, such an incident would not implicate the federal due process standard. Claim Five therefore shall be dismissed.

### v. Claim Six

Defendants argue that Plaintiff's claim that his constitutional rights were violated through the imposition of false disciplinary charges fails as a matter of law. Dkt. 56 at 17. Defendants are correct. Generally, "a false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016); *see also Freeman v. Rideout*, 808 F.2d 949, 952–53 (2d Cir. 1986) (finding no due process violation when prison officer filed unfounded charges because inmate was granted hearing and had an opportunity to rebut charges). These claims may proceed, however, under a theory of retaliation. *See Cole*, 631 F. App'x at 186. Thus, Defendants' Motion is granted in part and denied in part as to Claim Six.

*vi: Claims Seven, Eight, and Nine*

Defendants contend that Plaintiff's claims alleging that Officer Richardson, Warden Bailey, and Ms. Holmes violated his due process rights during disciplinary hearings must be dismissed because they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny. Dkt. 56 at 18.

Defendants are partially correct. A prisoner cannot challenge the validity of a disciplinary conviction in a § 1983 suit unless the plaintiff can demonstrate that the conviction has been invalidated. *See Edwards v. Balisok*, 520 U.S. 641, 643 (1997); *Moskos v. Hardee*, 24 F.4th 289, 295–96 (4th Cir. 2022). In this case, the TAC does not allege that the disciplinary proceedings in which Officer Richardson allegedly denied Plaintiff's requests for evidence and relied on insufficient evidence were invalidated. Nor does it allege that the disciplinary conviction that Warden Bailey upheld was reversed. The TAC does allege that Ms. Holmes found Plaintiff guilty of a disciplinary offense without considering video evidence and that the charge was reversed on appeal once the video footage was reviewed. Dkt. 45 at 11–12. Claims Seven and Eight therefore cannot proceed under a theory of due process; however, Claim Nine as to Ms. Holmes may proceed.

In his opposition brief, Plaintiff contends that the claims related to his disciplinary proceedings may all proceed, instead, under a theory of retaliation. Dkt. 65 at 29–30. Defendants have not confronted this argument. Because filing false disciplinary charges can be sufficiently adverse to support a First Amendment retaliation claim, Plaintiff's claims that Defendants levied and upheld disciplinary charges against him in retaliation for exercising his First Amendment rights may proceed. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545–46 (4th Cir. 2017) ("[I]nmates possess a First Amendment right to be free from retaliation for filing a grievance.");

14

*see, e.g., Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44–45 (4th Cir. 2014) (vacating the district court's grant of summary judgment on the plaintiff's claim that a prison officer had retaliated against the plaintiff by charging him with a disciplinary offense for filing a grievance complaining of opening his mail). Therefore, the Motion to Dismiss with respect to Claims Seven, Eight, and Nine will be granted in part and denied in part. Claims Seven and Eight may proceed under only a theory of retaliation. Claim Nine may proceed as a retaliation claim, and as a due process claim as to Ms. Holmes.

> *vii: Claim Ten*

Defendants argue that the TAC fails to state a claim for intentional infliction of emotional distress ("IIED") against Defendants Warden Bailey, Officer Harrison, Officer Richardson, Ms. Holmes, and Officer Coleman. Dkt. 56 at 21. They contend that Plaintiff has alleged only that Defendants ignored COVID-19 protocols, which caused Plaintiff to fear getting ill, and that those allegations do not amount to outrageous behavior resulting in severe emotional distress. *Id.* at 23. In his opposition brief, Plaintiff presents a different basis for the IIED claim. Dkt. 65 at 37. He contends that it was outrageous for the prison to shut down the law library during the COVID-19 pandemic, particularly because the closure occurred eight months before any positive cases were detected at LCC. *Id.*

Under Virginia law, a plaintiff must allege four elements to state a claim for IIED: "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007).

The Court finds that the Complaint fails to plead factual content suggesting outrageous conduct that would support an IIED claim. To be "outrageous," the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E.2d 160, 162–63 (Va. 1991) (holding that the plaintiff's alleged nervousness, sleeplessness, stress and related physical symptoms, withdrawal from activities, and inability to concentrate at work were not "the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it"). Given the sheer number of shutdowns and closures, including of courts, that occurred throughout the pandemic to limit the spread of COVID-19, combined with the ease at which infectious disease can spread in prisons, precluding inmates from physically entering the law library as a containment measure cannot be considered extreme, atrocious, or intolerable.[4] Additionally, Plaintiff does not allege facts suggesting that his emotional distress was severe. For these reasons, Defendants' Motion is granted with respect to Claim Ten and it will be dismissed.

### viii: Claim Eleven

Defendants contend that the TAC fails to state any claims for negligence because the TAC does not show that Warden Bailey and Ms. Holmes were negligent in not allowing Plaintiff access to the law library; that Officer Coleman was negligent in violating Plaintiff's right to grieve; or that Officer Richardson acted negligently while presiding over Plaintiff's disciplinary proceedings.

---

[4] *See, e.g.*, Chris Dall, *Studies Spotlight High COVID-19 Infection Rate in US Prisons*, UNIV. OF MINN. CTR. FOR INFECTIOUS DISEASE RSCH. & POL'Y (Aug. 21, 2020), https://www.cidrap.umn.edu/news-perspective/2020/08/studies-spotlight-high-covid-19-infection-rate-us-prisons; Joel Achenbach & Laura Meckler, *Shutdowns Prevented 60 Million Coronavirus Infections in the U.S., Study Finds*, WASH. POST (June 8, 2020, 3:15 PM), https://www.washingtonpost.com/health/2020/06/08/shutdowns-prevented-60-million-coronavirus-infections-us-study-finds.

Dkt. 56 at 23. Plaintiff does not contest this argument. Therefore, the Court may, and will, adopt Defendants' arguments for dismissing the negligence claims. *See Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (observing that when the plaintiff failed to respond to an opposing motion, the district court could dismiss claims "on the uncontroverted bases asserted therein").

### ix. Claim Twelve

Defendants assert that Plaintiff's allegations that Ms. Holmes harassed him by finding him guilty after a disciplinary hearing and refusing to allow him physical access to the law library are underdeveloped. Dkt. 56 at 23–24. The Court is unable to identify a tort of harassment recognized under Virginia law. Under the Constitution, verbal abuse by prison officials does not constitute constitutional harm actionable under § 1983. *See Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (affirming the district court's dismissal of an inmate's claim alleging that a jail employee incited other inmates to attack him but failing to allege any physical attack). A claim could proceed for "harassment" that involved a verbal threat of physical harm "*and* concerted action consistent with that threat by prison guards which *in combination* caused actual fear to the threatened prisoner." *See Ogles v. Willis*, No. 1:10cv557, 2010 WL 3070078, at *3 (M.D.N.C. Aug. 3, 2010) (relying on *Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978)), *adopting R. & R.* No. 1:10cv557, 2011 WL 772883 (M.D.N.C. Feb. 28, 2011). But Plaintiff's claims do not allege any physical threats. Therefore, Claim Twelve must be dismissed.

### x. Claim Thirteen

Defendants contend that the Court should dismiss Plaintiff's claim that Warden Bailey, Officer Harrison, and Ms. Holmes conspired to violate his constitutional rights because Plaintiff's allegations are too vague to establish a meeting of the minds. Dkt. 56 at 20–21.

17

To state a claim for conspiracy under § 1983, "a plaintiff must show that defendants 'acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in . . . deprivation of a constitutional right.'" *Shooting Point, L.L.C. v. Cumming*, 243 F. Supp. 2d 536, 537 (E.D. Va. 2003) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). Although Plaintiff need not point to "direct evidence of a meeting of the minds," he must at least point to "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421.

Plaintiff contends that there must have been a meeting of the minds between Warden Bailey and Ms. Holmes because five days after Plaintiff complained to Warden Bailey about needing physical access to the law library, Plaintiff received a letter from Ms. Holmes about an upcoming change to LCC's law library policy, even though Plaintiff had not complained to Ms. Holmes about physical access to the law library. Dkt. 65 at 36. Plaintiff further urges that by misleading him about renovations that never occurred, Warden Bailey and Ms. Holmes engaged "in an effort of conspiracy to further torment Plaintiff." *Id.* Yet none of these arguments show that Defendants' actions resulted in the deprivation of a constitutional right. Moreover, the Court has already concluded that the TAC fails to state a claim for relief based on Plaintiff being denied physical access to the law library. Therefore, Plaintiff cannot rely on that constitutional harm as the basis for his conspiracy claim against Warden Bailey and Ms. Holmes. Additionally, Plaintiff has not defended the conspiracy claim against Officer Harrison, and so that claim must be dismissed as well. *See Pueschel*, 369 F.3d at 354.

### IV. Conclusion

Through an Order that will issue alongside this Memorandum Opinion, the Court will grant in part and deny in part Defendants' Motion to Dismiss. The following claims, as modified, may

proceed: (1) Claim Two under a theory of retaliation; (2) Claim Three; (3) Claim Four as First and Sixth Amendment Claims; (4) Claim Six under a theory of retaliation; (5) Claim Seven under a theory of retaliation; (6) Claim Eight under a theory of retaliation; (7) Claim Nine under a theory of retaliation against Officer Richardson and Ms. Holmes and as a due process claim against Ms. Holmes; and (8) Claim Fourteen.  For the reasons previously stated, all other claims are dismissed.

Entered this 30ᵗʰ day of March, 2023

Alexandria, Virginia

_____ /s/
Patricia Tolliver Giles
United States District Judge

19