# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINA

*Alexandria Division*

**JACOB RADER**

    **Plaintiff,**

v.

**MACK A. BAILEY, Jr., et al.,**

    **Defendants.**



FILED
MAILROOM

JUL 24 2023

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**Civil Action No. 1:20 cv 1423**

## PETITIONER'S RESPONSE AGAINST DEFENDANT'S

## MOTION FOR SUMMARY JUDGEMENT

Plaintiff's response to Defendant's Motion for Summary Judgement includes a brief response to most or all of Defendant's Claims based on prudence, not because Defendants have merit or provide new evidence for cause regarding Defendants Motion for Summary Judgement.

Plaintiff does not stipulate that Defendants have accurately interpreted or listed Plaintiff's Claims correctly and Plaintiff requests this Court to default to Plaintiff's Third Amended Complaint and the accompanying exhibits that support all of Plaintiff's Claims. Included are Affidavits to Petitioners Response Against Defendant's Motion For Summary Judgment.

Defendants did submit multiple Affidavits to accompany their Motion for Summary Judgement which also does not disprove Petitioner's Claims in any capacity against the exhibits which Petitioner has already submitted to this court. In fact, Petitioner can and will prove that undisputable video evidence and VDOC Policy evidence exists proving perjury and or incompetence within at least two of the Defendants Affidavits. The overwhelming evidence in this case proves the Defendants conspired and violated Petitioners Constitutionally protected rights. The Motion for

1

Summary Judgment for Defendants on all Claims must be denied with the exception of perhaps Claim 14.

Defendants argue on Pages 4 and 5, Items #8 and #9, within the Section titled, "Facts Related To Plaintiffs Claims of Retaliation" and "Denial of Access to Grievance Process," that Officers Harrison and Winslow did not physically interfere or deny Plaintiff's access to the Grievance Process. Defendants have misconstrued Plaintiffs Claims to this court and Plaintiff has never argued that any VDOC Official had ever physically interfered with Plaintiff's ability to obtain, write, or submit Grievance Forms. This argument is moot. Plaintiff has always been clear and consistent that Officers at LCC continuously and repeatedly retaliated against Plaintiff precisely because Plaintiff indeed did utilize the Grievance Process. Plaintiff stipulates that no Officers at Lunenburg Correctional Center ever physically denied Plaintiffs ability to receive and write Grievances. Plaintiff has previously provided this court with retaliatory evidence showing a direct cause and effect and/or chain of events proving that within days of Plaintiff submitting a Grievance Form(s) about a specific LCC Officer(s), said LCC Officer(s) would file meritless and false institutional charges against Plaintiff. The deduction of the evidence and retaliation is obvious, and any reasonable jury would concur.

Defendants argue on Page 5, Item #11 that Plaintiff disrupted "Count" by telling Officer J. Winslow, "You need to be wearing your fucking mask," on April 15th, 2020, during LCC Institutional "Count Time." Officer Winslow also provided this court with an Affidavit as "Exhibit A" in which Winslow's claims can easily be proven as false and/or perjured statements. The LCC Dorm where the Plaintiff was housed has multiple angles of surveillance video which can prove: 1) Officer Winslow was not wearing his mask which his Affidavit swears to and; 2) Officer Winslow could never of had a complete 360-degree vantage point to determine whom of the approximately ninety inmates said, "You need to be wearing your fucking mask."

The LCC surveillance video clearly shows Plaintiff sitting on his top bunk facing the opposite direction when an inmate abruptly commented that Winslow was not wearing his mask, which was in violation of the VDOC Covid-19 Policy directed to LCC Officers. The disruption in the video is obvious by the reactions and mannerisms of the estimated ninety inmates who themselves can be seen looking around laughing trying to ascertain who made the loud comment. The video also clearly shows Officer Winslow standing at the very front of the Dorm not wearing his mask and the Plaintiff facing the opposite direction on his bunk at the very back of the Dorm. It should be noted that "Count" had not officially began when the loud comment was made and/or heard. "Count" does not officially begin until all inmates are properly positioned, the Dorm goes completely silent, and the senior Officer makes the official "Count" announcement. Whomever made the comment that Winslow was not wearing his mask did not even violate "Count." If Winslow could positively identify which of the ninety inmates made the comment the appropriate charge would not have been for "Disrupting Count" since

2

"Count" had not officially begun. The appropriate charge would have been VDOC Code #222, for using vulgar language towards an LCC Official.

Due to the fact that millions of people were dying all over the world from the spread of Covid-19, only LCC Officials who had Covid-19 could have infected the LCC Campus and because most LCC Officers refused to wear their masks, Plaintiff did admit in his Disciplinary Hearing that in self-defense when Officer Winslow moved down the aisle and came within 6 feet of Plaintiffs bunk area that Plaintiff politely asked Officer Winslow to please place his mask, which was dangling around his neck, to a position on his face covering his mouth and nose. The action of self-defense would not qualify as disrupting Count as Plaintiff had the right to protect himself from the Spread of Covid-19.

The video proving Plaintiffs Claims were not utilized by Hearings Officer Holmes because she claimed Plaintiff did not request the videos which is untrue. However, the videos were utilized by the previous Warden of LCC and because the evidence did prove Plaintiffs Claims and could not prove Officer Winslow's Claims, the Disciplinary Action was reversed against Plaintiff.

Defendants argue on Page 6, Item #13, Plaintiff was charged for 201 (A), Disobeying a Direct Order, by Officer Harrison. Again, the Disciplinary Charge against Plaintiff is clear Retaliation by Harrison and has no merit. Just a few days prior to the 201 (A) Disciplinary Charge being issued by Harrison, Plaintiff filed two Grievances against Harrison for serving food to inmates on two separate occasions during Covid 19 while not wearing a mask which can clearly be seen on LCC Surveillance video. Due to Plaintiff writing an Informal Complaint which Harrison was aware of, Harrison was disciplined by the Warden in a private meeting with Lieutenant Graves who personally witnessed the incident.

In order to Retaliate against Plaintiff, Harrison charged Plaintiff with a meritless Disciplinary Offense when Plaintiff entered the Dorm Foyer which leads to Dorm Counselor Colemans Office. Harrison claims Plaintiff entered into the Dorm Foyer without having permission which is false. Plaintiff had an established appointment with Counselor Coleman and was told by Counselor Coleman to be at her office immediately on the morning in question to finish the legal work necessities for Plaintiff's court ordered deadline, which Harrison was not privy to. At LCC, Inmates are allowed to enter the Dorm Foyer without needing permission to do so from a booth Officer even though booth officers at times may need to release the magnetic door lock. There is no VDOC Charge applicable to this situation, so Harrison utilized 201 (A), "Disobeying a Direct Order," as a means to write a meritless charge and retaliate against Plaintiff accordingly.

Defendants argue on Page 7, Item #14, that Lieutenant Jones legitimately charged Plaintiff with not wearing a mask within the Inmate Dorm Sleeping Quarters. Plaintiff previously supplied this court with an Affidavit from another inmate proving inmates were not required to wear masks in the Inmate Dorm Sleeping Quarters because wearing

3

masks while sleeping or while being within the Dorm Sleeping Quarters was unreasonable. Daily LCC announcements were made each morning, afternoon and evening which superseded the original "VDOC Sneeze Guard Policy." The new Mask Policy which was announced over the loud speakers daily was clear that inmates need only wear masks while in the Dorm Dayroom or if leaving the Dorm entirely and moving throughout the LCC campus to another building. The charge against Plaintiff by Jones had no merit. Phelps putting his mask on is irrelevant. Just because Jones told Phelps to put his mask on does not mean Jones had cause or authority to make any inmate put their mask on while being in the Dorm Sleeping Quarters. Phelp's concern was that Jones was an immediate supervisor to Phelps and Phelps wanted to avoid losing his job or having any issue with Jones in the form of retaliation.

Defendant argues on Page 9, Item #19, that Plaintiff was properly charged for using vulgar language for using the word "Bullshit" during a Disciplinary Hearing. Plaintiff has previously provided this court with the exact VDOC definition of Offense Code #222 which proves any inmate may say the word Bullshit in the presence of a VDOC Official without violating VDOC Offense Code #222. Again, this charge had no merit.

Defendant argues on Page 9, Item #20, that Phelps did not return the witness inmate form which is untrue. Plaintiff was moved from the Dorm where Phelps was housed and where Jones wrote the meritless charge against Plaintiff. Due to the campus wide Covid-19 lockdown, inmates rarely ever saw or ran into other inmates from other dorms. Finally, sometime after Plaintiffs Disciplinary Hearing did Plaintiff by-chance see Phelps on the "Broadway." It was at that meeting on the "Broadway" that Phelps told Plaintiff he did indeed turn-in the witness form and wanted to be a witness for Plaintiff. On information and belief, LCC and the VDOC intentionally avoids utilizing a "refusal to be a witness" form/signature from inmates who truly do refuse to be a witness as a means to make claims that signed inmate witness forms were not received. Plaintiff also requested all video angles from the incident which Hearings Officer Richardson denied. Richardson would only review 1 angle of the video. Again, the meritless charge against Plaintiff by Jones is false because LCC policy superseded VDOC policy as Inmates at LCC were told daily that LCC inmates were not required to wear masks while in Dorm Sleeping Quarters.

Defendant argues on Page 11, Item #22, Holmes properly found Plaintiff guilty based on a preponderance of the evidence that Plaintiff yelled and disrupted "Count" by saying, "You need to be wearing your fucking mask." However, Holmes did not properly use the admissions by Plaintiff during the Disciplinary Hearing to prove Plaintiff was indeed guilty by a preponderance of evidence of yelling, "You need to be wearing your fucking Mask." Instead, Holmes twisted Plaintiff's statement in order to fit the narrative. Plaintiff did indeed admit that in self-defense once Winslow came within six feet of Plaintiff, Plaintiff politely asked Winslow to cover his mouth and nose with his mask that was dangling around his neck which would not qualify as disrupting "Count." Winslow

4

placed Plaintiff and all other ninety inmates life and health in jeopardy of catching Covid-19 as the LCC video surveillance proves. Plaintiff was specifically charged with stating, "You need to be wearing your fucking mask," which disrupted count which none of the evidence proves. In fact, the video which was denied by Holmes proves Plaintiff is innocent and was utilized by the previous LCC Warden who overturned the false charge by Winslow and the false disciplinary decision by Holmes.

Defense argues on Page 11, Item #21, Holmes does not remember confiscating Plaintiff's Legal Book, titled "The Hearsay Handbook." Holmes' claim that she "does not remember" is not a sworn statement of denial that she did not indeed confiscate Plaintiffs Legal Book nor that she did not tell the LCC Investigations Officer and Lieutenant Graves that the reason Holmes confiscated the Plaintiff's legal book was because "an LCC Canine Officer identified the book was laced with synthetic marijuana." Plaintiff has previously provided this court with specific evidence in the form of Inmate Grievances and exact quotes that multiple LCC Officers told Plaintiff exactly why Holmes confiscated Plaintiffs legal book, which at the time was even more malicious than just the lies told by Holmes because the LCC Law Library was indefinitely closed, and Plaintiff was petitioning the State Supreme Court which had issued Show Cause deadlines on Plaintiff. Both Lieutenant Graves and the LCC Investigations Officer both told Plaintiff that Homles confiscated "The Hearsay Handbook" because a canine officer had identified the book had been laced with synthetic marijuana. On information and belief, all LCC Canine Officers and Inmate Dog Program Trainee Canines were immediately removed at the beginning of the Covid-19 pandemic. Therefore, there were absolutely no dogs at LCC when Holmes made her fictitious statement. Any argument that Plaintiffs family did not properly go through an authorized vendor to receive the book is simply false and doesn't change the fact that Holmes confiscated the book under false pretenses. Confiscating a legal book mailed to LCC by Plaintiff's family during the time period where all inmates were denied access to the LCC Institutional Library by Plaintiffs family is malicious and falls directly into line with all of Holmes multiple retaliations against Plaintiff.

Defense argues on Page 12, Item #23 that Holmes approved a "Blocked Attorney Call" on January 21, 2021, which absolves her of retaliation which is false. Plaintiff originally requested a privileged phone call to his court appointed attorney John Jones, not a "Blocked Attorney Call" 3 weeks earlier on December 31st, 2020, that was re-routed to Holmes that went unanswered. Therefore, Plaintiff was forced to resubmit another privileged phone call request because Plaintiffs Dorm Counselors kept telling Plaintiff that Homles would not respond to their phone messages and they did not know what else they or Plaintiff could do in order to allow Plaintiff to call from a counselors office, as was normal protocol in this type of situation. Inmates at LCC were regularly allowed to call their attorneys in the privacy of a Dorm Counselors Office under Section 866.3 Section IV Article B which is what Plaintiff requested on December 31st, 2020. This was yet another act of retaliation by Homles against Plaintiff. Blocking an Attorneys phone number does not provide true attorney client privilege. The inmate phone bank is

5

in the Dayroom where there is no such thing as privacy and phone calls are limited to 20 minutes. The inmate Dayroom is an intense environment riddled with inmates cooking, playing board games, watching TV, and general socialization. Also, attorneys do not trust the "Blocked Number" modality and advise inmates not to use the blocked phone call system because of "Jailhouse Snitches" and by law the veil of privilege can be pierced even if the phone number is allegedly blocked. Thus, it is normal practice for inmates to use their Dorm Counselors Office Phone and it was only this account where Plaintiff was singled out, ignored, and retaliated against by Holmes.

Holmes ignored Plaintiffs original request for 3 weeks and by the time Plaintiff was forced to use the inmate phone in the Dayroom to speak to his attorney, the damage was already done. John Jones had already submitted an Appeal to the Supreme Court of Virginia that didn't preserve at least seven of Plaintiffs proper State Appeal Claims that are now being heard in US District Court via a Habeas Petition, Civil Action No. 1:21 cv 01017. Holmes retaliation had severe impact against Plaintiffs Constitutional Rights.

Defense argues on Page 13 and 14, Item #24 that Holmes did not harass Plaintiff regarding not providing Plaintiff physical access to the LCC Institutional Law Library. This reckless denial of fundamental rights to Access the Courts by Warden Bailey and Holmes smacks of conspiracy, retaliation, unreasonableness, cruelty, and malice in a campaign of harassment.

The argument of Holmes attempting to justify or explain the difference between legal mail pick-up being in a separate office, yet in the same building and literally right next to LCC Institutional Law Library which was, "quicker than the time spent researching law material in the law library," lacks common sense and ignores the facts regarding the spreading of the Covid-19 virus. The amount of time, which can be seconds, in order to contract Covid-19 can most certainly happen while waiting in-line with up to twenty other inmates to collect legal mail. However, going to the Law Library by oneself or with perhaps one other inmate reduces the chance of contracting Covid-19 comparatively. Not to mention, the VDOC and LCC closed the LCC Institutional Law Library ten months prior to any LCC inmate testing positive for Covid-19 and then kept the LCC Institutional Law Library closed for two years without any accommodations, reasonable scheduling for inmates who had Show Cause Orders, or performance to accommodate inmates who had a Constitutional Right to access it especially when the Supreme Court of Virginia demanded a response from Plaintiff which proof was provided directly to Holmes and Warden Bailey. For the VDOC, LCC or Defense Counsel to suggest that LCC Law Library Clerks will and can properly conduct research for other inmates is irresponsible and unrealistic. LCC Law Library Clerks are given no formal training by the VDOC or LCC or any legal scholar and no LCC Law Library Clerk had any prior experience in the law before becoming an LCC Law Library Clerk. The ultimate fate of writing and researching one's own defense as a Pro Se exclusively rests on the Pro Se. In fact, Plaintiff did adhere to the unreasonable policy of "Legal Research Requests" by the VDOC and LCC and requested legal material on four separate

occasions to Holmes which took her an average of twenty-eight days to return. Finally, once those requests were fulfilled by Holmes they came back to Plaintiff incomplete and/or irrelevant. Those delays which went directly to and from Holmes per the LCC Covid-19 Policy averaged 28 days and certainly proves harassment and retaliation considering all the surrounding and aforementioned circumstances.

Defense argues on Page 14, under Section II, "Standard of Review" Item "A" that the decision by this court for Summary Judgement is entitled "if the evidence is such that a reasonable jurist could return a verdict for the non-moving party." In this case there is an abundance of evidence proving that Holmes began her campaign of reckless and retaliatory behavior against Plaintiff when Holmes first acted as Plaintiffs Hearings Officer when Officer Winslow clearly filed a falsified report against Plaintiff on April 15th, 2020. Video Surveillance is relevant in proving or disproving claims even when audio recording isn't possible or isn't available. Non-verbal Acts of Communication is a form of Communication and at a minimum is circumstantial evidence that can be weighed properly by Juries. The clear actions of individuals shown in video evidence without audio is used in cases and courtrooms all over the country, including criminal and civil cases. The argument positioned by Defense only supports the Plaintiff. If audio evidence wasn't available then it further proves Holmes didn't have enough evidence even under the preponderance threshold to find Plaintiff guilty of Winslow's claims. There were over ninety inmates in the Dorm at the time and the Plaintiff had yet to turn around on his bunk in order for count to even commence. The moving party in this case has provided this court with substantial evidence in multiple forms which prove material facts beyond the consideration of Summary Judgement for the Defense and all claims are ripe for trial.

The LCC surveillance video clearly shows Winslow not wearing his mask during count and not wearing his mask while serving inmates food. It was Winslow's ego that created the issue when he was asked by multiple inmates to please wear his mask in order to not further the spread of the Covid-19 virus, especially while serving food. Instead of abiding by VDOC and LCC Policy and just putting his mask on, Winslow retaliated with a false and meritless charge against Plaintiff who had the right to grieve without retaliation. Holmes used poor judgement as a Disciplinary Hearings Officer, ignored evidence and found Plaintiff guilty based on evidence that was not part of the original charge. Plaintiffs admission about asking Winslow to please wear his mask as a self-defense mechanism after another inmate yelled, "You need to be wearing your fucking mask," is not what Plaintiff was charged with, but yet found guilty of. This argument regarding not having audio lacks any fundamental reasonableness to establish Summary Judgement for the Defense.

The Defense argues on Page 15, Section "B" that Plaintiffs request for Injunctive Relief are moot. This is incorrect. Just because Plaintiff is no longer at LCC does not mean these wrongs against Plaintiff should not be corrected. Further, the VDOC and LCC were unreasonable in shutting down the Institutional Law Library with no

7

accommodation or modality of allowing any and every inmate to perform their own legal research as needed, especially when State and Federal Courts demand responses. This blatant disregard of inmates Constitutional Rights to Access the Courts is absurd and profound. The lack of common sense and laziness shown by the VDOC and LCC to not find a way to accommodate inmates needs for the Institutional Law Libraries for over two years is terrifying and flies-in-the-face of what the foundation of the constitution provided to all American citizens. Closing the Institutional Law Libraries temporarily at the beginning of Covid-19 may have been understandable, but at no point did the VDOC or LCC Officials find a minimal or reasonable means to accommodate those who needed to perform empirical research for two years. If this court allows the VDOC and LCC to violate inmates essential Constitutional Rights and use Covid-19 as an excuse to do so that lasted for two years, this will send a message to VDOC and LCC Officials that will green-light other unsubstantiated Constitutional Rights violations in the future. Accessing the Courts is invaluable and is the foremost Constitutional Right that sustains all other Constitutional Rights. This court must recognize that there is no more precious Right for inmates than Accessing to the Courts and that the VDOC and LCC are guilty of punitive damages accordingly. The Supreme Court of Virginia demanded Show Cause from Plaintiff with hard deadlines which was ignored by Holmes and Warden Bailey. Any VDOC or LCC Policy must not and cannot supersede Court Orders. No reasonable jury would not find in favor that the VDOC and LCC shut down all Institutional Law Libraries for over two years and in doing so did not violate VDOC Inmates rights to access the courts. The VDOC made no reasonable accommodations other than request forms for legal research performed by a non-trained law library clerk, most likely not even a High School Graduate who was paid .41 cents per hour to monitor Law Library material from theft or destruction. Law Library Clerks at LCC aren't even tasked or allowed to make photocopies. Current, Past and Future inmates in the custody of the VDOC deserve protection of this Constitutional Right and this court must protect them as this issue is not moot and is most definitely live.

Plaintiff does concede that currently Plaintiff is not in jeopardy of being railroaded in Disciplinary Hearings by Richardson and Holmes due to being released in October 2022. However, there is always a chance Plaintiff may unintentionally violate the terms of his probation and is then returned to the VDOC or LCC and could face greater retaliation by Richardson and Holmes. Further, the injunction ordering Defendant Bailey to expunge Plaintiffs LCC Disciplinary convictions and record is still relevant as Plaintiff should not have his record or reputation tarnished by Due Process violations. However, if this court would prefer a decision made by the jury prior to clearing the Plaintiffs record, Plaintiff will stipulate.

Defendants argue on Page 18 in "Claim 3" that Claims 2,4,7,6, and 9A should be dismissed regarding retaliation and/or that the argument lacks specific criteria for a retaliation claim which is incorrect. Sufficient evidence which proves retaliation has already been presented to this court and Defendants have presented nothing to disprove otherwise. Defendants once again are trying to misconstrue the retaliation argument on

Page 19 under section, "Defendant Winslow (claims 2 and 6) by arguing Plaintiff was not physically denied access to the Grievance Process which Plaintiff has never made that Claim.

"The Right to Grieve" does not exclusively mean the right to physically access Grievances Forms. "The Right to Grieve" is self-evident to mean, "Grieve without Retaliation." Winslow clearly retaliated against Plaintiff and the evidence presented to this court clearly demonstrates Winslow was not wearing a mask during "Count" and not wearing a mask while feeding inmates. Once Winslow was asked and refused to wear his mask he wrote a meritless charge against Plaintiff in order to send a message to all inmates that inmates have no power which exclusively belongs to LCC Officers including Winslow. All of these false charges, acts of retaliation, railroaded hearings and Constitutional Violations are products of the "Blue Wall of Silence and Power" and existed when lives were at stake from Covid-19 which didn't matter to Holmes, Harrison, and Winslow. Claims 2 and 6 must stand.

Defendants argue on Page 20, within Section, "Defendant Harrison (Claims 2 and 6)", again that Harrison did not physically interfere with Plaintiffs physical access to the Grievance procedure. This claim was never made by Plaintiff. Claim 2 against Harrison should not be dismissed as "The Right to Grieve" is self-evident meaning "The Right to Greive without Retaliation."

Defendants argue that Claim 6 should also be dismissed because Harrison did not retaliate when Harrison wrote a false charge on June 12th 2020, just days after Plaintiff personally grieved to Lieutenant Garves directly in front of Harrison and also wrote multiple grievances on two separate occasions when Harrison wasn't wearing a mask while serving inmates food. Documentation of this evidence was previously provided to this court. Harrison was not aware that Plaintiff had a meeting scheduled with Counselor Coleman and Harrison utilized the "Disobeying a Direct Order" charge against Plaintiff when Plaintiff entered the Dorm Foyer to meet with Counselor Coleman to finish photocopies of his legal work that was immediately due to the court. Plaintiff did follow the orders of Counselor Coleman that negates any claims by Harrison that Plaintiff could not proceed to Counselor Colemans office. Inmates do not need permission from control booth Officers to enter the Foyer to meet with Counselors. This charge had no merit and comes immediately following Plaintiffs verbal and written grievances against Harrison. Claims 2 and 6 must stand and must not be dismissed by this court.

Defendants argue on Page 22, Section, "Defendant Coleman(Claim 2)" that Plaintiff was not denied Physical Access to the Grievance Procedure. Plaintiff has never once made this Claim and Defense is mischaracterizing the Retaliation Claim. Claim 2 against Coleman must stand.

Defendants argue on Page 22, Section, "Defendants Holmes (Claims 4A and 9A)" that inmates may only receive publications mailed to the institution directly from the vendor. However, Holmes didn't confiscate the legal book titled, The Hearsay Handbook"

9

because of claims that it wasn't sent in from a proper vendor. Holmes confiscated the legal book because Holmes claimed that a Canine Officer identified that the book was laced with synthetic marijuana and there were no Canine Officers at LCC during the Covid-19 Pandemic because of a policy that directly moved all Canines from the facility. In total, the Plaintiffs family used the same modality to send in approximately 15 legal and non-legal books over a three-year time period which were never disrupted because the Plaintiffs family always sent in books through the appropriate and approved channels. Holmes confiscated Plaintiffs legal book when the LCC Institutional Law Library was closed and immediately before Plaintiff had a Show Cause deadline with The Supreme Court of Viriginia which Holmes was aware of because at Holmes request Plaintiff provided Holmes with the Courts Show Cause Order. Holmes sent Plaintiff a letter on LCC stationary explaining that the LCC Library was closed and Plaintiffs request to physically access the LCC Institutional Library was denied. This Claim must stand, and this court should not dismiss Claim 4A.

Defense also continues to argue Holmes Disciplinary Hearing was justified because Holmes found Plaintiff guilty on the preponderance of the evidence for the charge which was written by Winslow claiming Plaintiff yelled, "You need to be wearing your fucking mask." Instead, Holmes twisted the charge and admission by the Plaintiff in order to charge Plaintiff with something Winslow did not say the Plaintiff did. This is clearly a violation of Due Process, especially when video evidence was denied by Holmes which proves Winslow wasn't wearing his mask in accordance with VDOC and LCC policy. When the anonymous person yelled about Winslow not wearing his mask, "Count" hadn't even commenced so there was no violation regarding "Disrupting Count." If anything, Winslow should have written a charge to the appropriate inmate for VDOC Offense Code #222 but did not do so because Winslow could not prove which of ninety inmates yelled, "You need to be wearing your fucking mask."

Defense argues on Page 24, Section, "Defendant Richardson (claims 6,7,and 9A)" that Plaintiff violated VDOC Offense Code #222 by saying the word "Bullshit" during a Disciplinary Hearing. On June 23rd, 2020, Plaintiff indeed did use the word "Bullshit" to describe the false allegations and the manner in which Plaintiff was being railroaded during the Disciplinary Hearing. However, the charge against Plaintiff has no merit as what Plaintiff said does not meet the standard and/or definition for VDOC Offense Code #222, which states: "Vulgar or insolent language, gestures or actions directed towards an employee OR in the presence of persons who are not offenders OR not employed by DOC(general public, volunteers, and visitors).

The VDOC Code #222 is a two-pronged Code: 1) Vulgar language cannot be "directed toward" a VDOC employee and; 2) Vulgar language cannot be in the "presence of" a non-VDOC employee.

This charge does not have merit. First, Plaintiff did not use vulgar directed towards any VDOC employee which even Warden Bailey admitted to in his

"Disciplinary Hearing Appeal Response," dated July 8th, 2020. Not only did Richardson not understand that Plaintiff did not violate Code #222 by its own definition, nor did Warden Bailey. By definition, Plaintiff could only be properly charged with VDOC Code #222 if Plaintiff used the word "Bullshit" in front of persons not employed by VDOC OR called a VDOC employee "A piece of Bullshit". Richardson is employed by VDOC and Plaintiff did not call Richardson "A piece of Bullshit." Plaintiff did not violate VDOC Code #222. This claim must stand, and Summary Judgement must be denied.

Defendant claims Plaintiff filled out the incorrect form for video evidence, however, Richardson did deem the video relevant but would only view 1 of the 5-6 camera angles available to her when all camera angles were relevant to the incident. Filling out the wrong form is irrelevant to Plaintiffs request for evidence as long as Plaintiff filled something out requesting it. Perhaps the proper form wasn't originally provided to Plaintiff and the control booth didn't have extra copies. What is relevant is Plaintiff did request the video evidence in written form and that request was acknowledged by Richardson. The specific and particular camera angles that Richardson refused to view as part of the Disciplinary Hearing would have shown that Jones targeted the Plaintiff and Phelps. The camera angles would have shown that Jones walked past multiple inmates who clearly violated the "Dayroom Mask Policy" and also bypassed tens of other inmates who were not wearing masks right next to Phelps and Plaintiff all throughout the Dorm Sleeping Quarters. The LCC Mask Policy, which was announced every day, three times per day, over the campus intercom systems only required inmates to wear masks while in the dayroom. The other video angles would have shown Sergeant Jones trying to convince Officer Lee or Watson to write the disciplinary charge and Officer Lee or Watson shaking their head refusing to do so. When Lee and Watson made rounds after Sergeant Jones left they both told the Plaintiff that they as the on-duty officers refused to write the charge against Plaintiff because they both knew Plaintiff and Phelps didn't violate the VDOC Mask Policy. Claim 3 against Defendant Richardson must stand and not be dismissed.

The VDOC allows its Officers to write disciplinary charges for anything considered, "not obeying a direct order." The VDOC is not the US Military. Most, if not all of these "not obeying a direct order" charges are written when there is no actual VDOC violation that an inmate can be written-up for. Thus, it is a loophole for when a VDOC Officer wants to send a message and punish an inmate when there is no merit for charging an inmate with anything specifically outlined as a VDOC Offense. If one were to extrapolate this policy, VDOC officials could write-up inmates in-theory for refusing a demand of sexual favors to VDOC Officials or VDOC Officials could bribe inmates into participating in criminal activity. This policy in itself at a minimum is ethically questionable.

Defense argues on Page 26, Paragraph #2 that Claim 9A should be dismissed on Summary Judgement. Richardson most certainly ignored LCC Policy that inmates did not have to wear masks in the Dorm Sleeping Quarters and were only required to wear masks

11

in the Dorm within the "Dayroom." Defense has included a memorandum dated August 11, 2020, which states, "Offenders are to wear sneeze guards at all times unless instructed to remove it by a staff member. "All Times" includes, but not limited to, while on the telephone, using the Kiosk, sitting at the dayroom table, and in the bed area." However, that memorandum does not include the fact that two days after that memorandum was published, LCC hierarchy utilized its own Verbal Mask Policy of where masks must be worn in order to avoid an LCC Inmate Riot. Inmates immediately began defying the VDOC Memorandum because inmates at LCC do not lives in traditional jail cells, but live openly with approximately ninety other inmates in a Dorm setting. All inmates at LCC live within two feet of five other inmates, including bedding and personal belongings. Across the aisle within another five feet is another 5 inmates, so on and so forth. The exposure to simply go to the bathroom places almost every inmate within three feet of every other inmate. Wearing masks at LCC in the Dorm Sleeping Quarters was pointless and the LCC Inmates threatened a riot because in a Dorm Setting the original VDOC Policy meant wearing a mask 24 hours per day. However, inmates did have a personal choice of not going into to the LCC Dorm Dayrooms which is why LCC quickly modified and over-rode the VDOC Sneeze Guard, "All Times" Policy. The new Mask Policy announced everyday over the LCC intercom well known by everyone on the LCC campus but was ignored by Jones and by Hearings Officer Richardson. This claim must stand and must not be dismissed on Summary Judgement.

Defense argues on Page 27, Section, "Defendant Jones (Claim 6)" that the conclusory allegation is belied by the evidence. This is incorrect. The Defense argues that Phelps and the Plaintiff were not in their bed area which is also false, and the video evidence proves they were indeed in the Dorm Sleeping Quarters where masks were not required. Jones had no merit in ordering the Plaintiff and Phelps to wear a mask where masks were not needed to be worn according to the daily announcement and new verbal policy by LCC Officials which negated the written policy of the VDOC. The lack of reasonableness regarding the VDOC's "Sneeze Guard" Policy did not differentiate between Jail Cells and Dormitory Settings and inmates at LCC quickly took issue with the ridiculousness of said Policy. In order to avoid a Prison Riot, LCC Hierarchy quickly modified the VDOC Policy to only enforce those inmates who chose to go into the Dayroom without wearing a mask, even though the spreading of Covid-19 surely didn't exist only in the Dayroom and the Policy was seemingly pointless.

Jones didn't write the Plaintiff a charge of "Not Wearing A Mask" because Jones knew the charge wouldn't stand because Plaintiff didn't violate the Mask Policy. Instead, Jones circumvented the Policy and used the Loophole of "Disobeying a Direct Order." The new Mask Policy change, although well known by everyone at LCC was ignored by Jones. This claim must stand and not be dismissed on Summary Judgement.

Defense argues on Page 28, Section "Defendant Bailey (Claim 8)", that "Bailey testified through Affidavit that Bailey upheld the disciplinary charge because the

12

evidence supported it." However, the obvious error that Bailey misinterpreted VDOC Code #222 incorrectly is not mentioned, which clearly Bailey did.

VDOC Offense Code #222, states: "Vulgar or insolent language, gestures or actions directed towards an employee OR in the presence of persons who are not offenders OR not employed by DOC(general public, volunteers, and visitors).

The VDOC Code #222 is a two-pronged Code: 1) Vulgar language cannot be "directed toward" a VDOC employee and; 2) Vulgar language cannot be in the "presence of" a non-VDOC employee.

This charge does not have merit. First, Plaintiff did not use vulgar directed towards any VDOC employee which even Warden Bailey admitted to in his "Disciplinary Hearing Appeal Response," dated July 8th, 2020. Not only did Richardson not understand that the Plaintiff did not violate Code #222 by its own definition, nor did Warden Bailey, or worse they both knew Plaintiff didn't violate Code #222 and simply retaliated. By definition, Plaintiff could only be properly charged with VDOC Code #222 if Plaintiff used the word "Bullshit" in front of persons not employed by VDOC OR called a VDOC employee "A piece of Bullshit". Richardson is employed by VDOC and Plaintiff did not call Richardson "A piece of Bullshit." Plaintiff did not violate VDOC Code #222. This claim must stand, and Summary Judgement must be denied.

Defendants argue on Page 29, Section "D," "Defendants Holmes did not violate Plaintiffs Sixth Amendment Rights (Claim 4b)." Defendants argue and cited three case precedents that 'unlimited telephone use' does not sustain violating an inmate's right to counsel." First, the Plaintiff was asking for one phone call and had made no other phone calls to his Court Appointed Attorney, John Jones. This argument has no merit. In this specific instance the legal issue and claim is properly admitted to by the Defendants. This is not a question of unlimited telephone use or even a few telephone conversations to Plaintiffs attorney. The request for any type of phone call to Plaintiff's attorney was routed to Holmes and went unanswered for almost a month and then was deviated from the actual request of privacy to a "Blocked Number Call." Only when Plaintiff filed a Grievance against Holmes did she respond. The retaliation caused severe damage to Plaintiff losing the ability to speak to John Jones before Jones submitted Plaintiffs Appeal which did not preserve viable Claims. Holmes could have easily allowed Plaintiff to call Jones from a Counselors private office or immediately blocked Jones number, however, Holmes did neither. This incident falls directly in step with confiscating Plaintiff's legal book, denying Plaintiff access to the LCC Law Library and railroading Plaintiff's Disciplinary Hearing when it was obvious that Winslow wrote a meritless charge regarding Plaintiff disrupting count. These four major constitutional Violations of Plaintiffs Rights are not mere coincidences. This claim must stand, and Summary Judgement must be denied.

Defendants argue on Page 30, Section "E," Defendant Holmes did not violate Plaintiffs Due Process Rights (Claim 9b) under the Fourteenth Amendment because

13

Plaintiff was fined $5.00 on April 22nd, 2020. Plaintiff has never raised any Fourteenth Amendment Claim regarding a $5.00 fine. The Constitutional Violations committed by Homles against Plaintiff which the evidence shows are clear throughout Plaintiff's Civil Lawsuit that include: 1) Conspiring to Deny Plaintiff the right to access the LCC Law Library for two years; 2) Confiscating Plaintiffs mail and legal book under false pretenses; 3) Due Process violation of railroading Plaintiffs Disciplinary Hearing and; 4) Denying Plaintiff the ability to speak to his court appointed attorney by not responding to Plaintiffs requests, all in a campaign of harassment and retaliation. These acts denied Plaintiffs the right to life, liberty, and property without due process of law. A fine of $5.00 is insignificant compared to the very significant Constitutional Violations committed against Plaintiff. This claim must stand, and Summary Judgement must be denied.

Defendants argue on Page 32, Section "F," "Defendant Holmes did not harass Plaintiff on January 24th, 2022 (Claim 14)." Defendants base this argument on a verbal threat case precedent or a physical attack case precedent, or a combination of the two. Due to a lack of available resources, the pro se litigant will defer to the experience and wisdom of this court about when harassment and retaliation differ, are they mutually exclusive in this case and where the line or threshold exists.

Defendants motion for Summary Judgement must be denied. Plaintiff demands a Jury Trial.

Respectfully Submitted,

Jacob Rader

618 Black Oak Way

Lodi, CA 95242          7·17·23

310.595.4830

TheJakeRader@gmail.com

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July, 2023, I emailed to foregoing to: Stacie A. Sessoms, AAG, Attorney for named Defendants at: ssessoms@oag.state.va.us

7·17·23

15