IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

JACOB RADER,                          )
                                      )
        *Plaintiff*,                  )
                                      )
    v.                                )          Case No. 1:20-cv-1423 (PTG/IDD)
                                      )
MACK A. BAILEY, *et al.*,             )
                                      )
        *Defendants*.                 )

## MEMORANDUM OPINION

This matter is before the Court on a Motion for Summary Judgment ("Motion"), filed by

Defendants Mack A. Bailey, Jr., B.L. Holmes, Winslow, Harrison, Richardson, C. Coleman, and

Jones (collectively, "Defendants"). Dkt. 86. Jacob Rader ("Plaintiff"), a Virginia state prisoner

at the time of the events underlying this action, filed this civil rights action under 42 U.S.C. § 1983

and opposes the Motion. *See* Dkt. 93. For the reasons explained below, Defendants' Motion is

granted in part and denied in part.

### I. Background

Plaintiff filed this action in November 2020 and has since amended his Complaint three

times. *See* Dkts. 1, 13, 20, 45. The Third Amended Complaint ("TAC"), the operative pleading,

broadly alleges that Plaintiff, who was a Virginia state prisoner at Lunenburg Correctional Center

("LCC") between 2020 and 2022, was the target of a campaign of harassment and retaliation

carried out by prison officials in response to his repeated filing of informal complaints, internal

grievances, and civil lawsuits against them. *See* Dkt. 45. On March 30, 2023, the Court granted

in part and denied in part a Motion to Dismiss filed by the majority of the named Defendants. *See*

Dkts. 74–75. This Motion for Summary Judgment followed.

Before describing the undisputed factual record on which the instant Motion will be assessed, the Court pauses to identify the specific evidence it contains. Defendants have submitted several affidavits, Virginia Department of Corrections ("VDOC") Operating Procedures ("OP"), documents related to Plaintiff's grievances and disciplinary proceedings, and audio recordings of those proceedings.[1] *See* Dkt. 88. In compliance with Local Civil Rule 56(B), Defendants have also submitted a list of facts they contend are not in dispute and referring to the specific portions of the evidentiary record on which they relied in creating that list. *See* Local Civ. R. 56(B); Dkt. 88.

Although Plaintiff filed an Opposition and submitted a considerable amount of evidence, the organization of this evidence has been wanting. For instance, Plaintiff's Opposition does not cite to the portions of the record on which he relies and although Plaintiff submitted five affidavits,

---

[1] After Defendants filed the instant Motion, Plaintiff filed a Request for Subpoena, seeking an order directing officials to produce video footage that he claimed would support his case. *See* Dkt. 94. Defendants replied that the requested video footage does not exist, maintaining that such footage is ordinarily overwritten within roughly ninety days, unless a "serious incident"—usually involving criminal conduct or an injury to staff or an inmate—is its subject. *See* Dkt. 103 at 2–3. Defendants state that video is saved only if an inmate submits a request, which Plaintiff did not do. *Id.* Plaintiff does not dispute Defendants' position with respect to the preservation of video evidence. Because the video footage Plaintiff has requested cannot be obtained, his Request for Subpoena will be denied as moot.

Although the failure to preserve evidence may, in certain circumstances, allow for an adverse inference against the party responsible for the evidence's safekeeping, an adverse inference is not appropriate here. *See, e.g.*, *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995) ("Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence."). No evidence exists that Defendants had control over capturing or maintaining the requested video footage. Accordingly, intentional or unwitting loss of the video cannot be attributed to them, and allowing for an adverse inference against them would be an undue sanction. *Cf. Rivera v. Dickenson*, 2015 WL 5565273, at *6 n.7 (W.D. Va. Sept. 21, 2015) (refusing to draw an adverse inference against correctional officers where the plaintiff had failed to demonstrate the defendants' responsibility over lost photographs); Fed. R. Civ. P. 37(e)(2) (providing that only upon finding that a "party acted with the intent to deprive another party of the information's use in the litigation" may the court impose severe sanctions such as granting a default judgment before trial or instructing the jury to presume "that the lost information was unfavorable to the party").

2

three are unsworn and are thus inadmissible at the summary judgment stage. *See, e.g., United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Despite Plaintiff's failure to cite to the record and submission of both admissible and inadmissible evidence, the Court is bound to offer deference to Plaintiff in light of his *pro se* status. *See* Fed. R. Civ. P. 56(c)(3); *cf. Lovelace v. Clarke*, No. 1:18-cv-684, 2020 WL 2549285, at *2 (E.D. Va. May 19, 2020).

The following evidence submitted by Plaintiff has contributed to the statement of undisputed facts: the Complaint (Dkt. 1), the Amended Complaint (Dkt. 13), the Second Amended Complaint (Dkt. 20), and the TAC as each of these pleadings is sworn and thus may serve as an affidavit. *See Germain v. Shearin*, 725 F. App'x 225, 226 (4th Cir. 2018) ("A verified complaint contains a sworn statement indicating its contents are true and may be treated as an affidavit."). The Court has also considered the documents attached to the original Complaint (Dkt. 1-1); a collection of documents, including disciplinary hearing records, grievance and request forms, and state court filings (Dkt. 32); and the two sworn affidavits submitted with Plaintiff's Opposition (Dkts. 93-3, 96).

With respect to Plaintiff's pending claims, the following facts derive from the sources of evidence described and are not in dispute.

A.   **Relevant Facts**

At all times relevant to this action, Plaintiff was a Virginia state prisoner housed at LCC. Dkt. 45 ("TAC") at 3. Each of the defendants who filed the instant Motion were LCC employees in a variety of roles: Defendant Richardson served as an inmate hearings officer, *see* Dkt. 88-5 ("Richardson Aff.") ¶¶ 1, 4; Defendant Winslow served as a corrections officer, *see* Dkt. 98 ("Winslow Decl.") ¶ 1; Defendant Jones served as a corrections lieutenant, *see* Dkt. 99 ("Jones Aff.") ¶ 1; Defendant Holmes served as both an inmate hearings officer and then, beginning in

May 2020, the operations manager and law library manager, *see* Dkt. 100 ("Holmes Aff.") ¶ 1;

and Defendant Harrison served as a corrections officer, *see* Dkt. 88-4 ("Harrison Aff.") ¶ 1.

Plaintiff originally filed this suit in November 2020, naming Warden Bailey, Officer Holmes, and

former VDOC Director Harold Clarke as defendants. *See* Dkt. 1. The operative Complaint relates

to events that occurred in 2020, 2021, and 2022. *See* TAC. Consequently, many of Plaintiff's

claims relate to policies enacted or actions taken in response to the COVID-19 pandemic. *Id.*

**B.    Plaintiff's Filing of Institutional Grievances, Alleged Retaliation, and Alleged Due Process Violations**

At LCC, grievance and complaint forms are stored in the "control room" and are available

to inmates upon request.  Harrison Aff. ¶ 7.  During his time at LCC, Plaintiff filed ten regular

grievances and forty written complaints with the staff.  Dkt. 88-7 ¶ 5.  Plaintiff filed many more

grievances that were not accepted because they were repetitive of issues he had already raised. *Id.*

On April 15, 2020, Defendant Winslow was working in the 6B dormitory, both in the

control room and as a floor officer.  Winslow Decl. ¶ 4.  While conducting count, an inmate told

Defendant Winslow, "You need to be wearing your fucking mask."[2]  *Id.* ¶ 6.  Dormitory rules

require that inmates refrain from talking, moving, eating, drinking, or grooming during count. *Id.*

¶ 7.  Defendant Winslow identified the inmate as Plaintiff.  *Id.* ¶ 6.  Defendant Winslow attests

that Plaintiff violated this rule by yelling and therefore charged him with Disciplinary Offense

No. 213, "failing to follow institutional count procedures or interfering with count." *Id.*

Plaintiff's disciplinary hearing for the April 15 charge occurred on April 22, 2020.  Holmes

Aff. ¶ 5.  Before the proceeding, Plaintiff failed to request documentary or video evidence. *Id.*

---

[2] Defendant Winslow identified the inmate as Plaintiff.  *See* Winslow Decl. ¶ 6.  Plaintiff denies this, claiming that he "politely" asked Defendant Winslow to wear his mask when Defendant Winslow went to investigate the yelling.  *See* Dkt. 93-3 ¶¶ 4, 10, 11.  Due to this dispute, the statement of undisputed facts does not identify the individual who swore at Defendant Winslow.

Consequently, any existing video footage was not consulted during the hearing. *Id.* During his testimony, Plaintiff denied speaking to Defendant Winslow in the manner alleged but stated that he did tell Defendant Winslow he needed to wear his mask when Defendant Winslow approached him. *Id.* Defendant Holmes found Plaintiff guilty of the charge and imposed a $5.00 penalty. *Id.* On May 26, 2020, Warden Miller dismissed the charge on appeal. *Id.*

On June 2 and 7, 2020, Plaintiff filed informal complaints and grievances against Defendant Harrison, claiming that she had refused to wear her mask while serving food. TAC at 12–13. On June 12, 2020, Plaintiff attempted to visit VDOC Counselor Coleman in her office. *Id.* at 13. From the control booth, Defendant Harrison ordered Plaintiff to submit a request form if he wished to see Counselor Coleman.[3] Harrison Aff. ¶ 4. Despite Defendant Harrison's instruction, when another inmate was let into the pod, Plaintiff rushed into the dorm foyer and then, Counselor Coleman's office.[4] *Id.* Defendant Harrison charged Plaintiff with Disciplinary Offense No. 201A, the offense associated with disobeying a direct order. *Id.*

On June 23, 2020, Defendant Richardson conducted the disciplinary hearing related to the No. 201A charge. Richardson Aff. ¶ 5. Plaintiff pled not guilty and testified on his own behalf, arguing that he could not hear Defendant Harrison's order and that he simply walked through the foyer dorm door once it opened. Disciplinary Hearing at 6:14 (Dkt. 88-5, File Name "J. Rader-

---

[3] A dispute of fact exists concerning whether Plaintiff was able to hear Defendant Harrison's directive. Defendant Harrison attests that, after giving her order, Plaintiff stated, "I don't have to do shit. I am going to take my mail to [Counselor Coleman] this morning like she told me." Harrison Aff. ¶ 4. Plaintiff submits that the control booth "is encased in soundproof glass[,]" TAC at 13, and claimed during his disciplinary hearing that, although he could hear yelling from the booth, he could not discern words, Disciplinary Hearing at 6:14 (Dkt. 88-5, File Name "J. Rader-0529").

[4] Plaintiff does not deny that he acted in this manner, nor could he, for in the disciplinary hearing recording, Plaintiff admitted that he heard "screaming" from the control booth but nevertheless entered the dorm foyer without pausing. *See id.* This fact undercuts the TAC's allegation that the control booth is soundproof.

5

0529"). Defendant Richardson disputed Plaintiff's testimony and stated that, while in the control booth, she was able to hear inmates on the pod floor and had been able to hear officers in the booth while on the pod floor. *Id.* at 7:44. In response to Defendant Richardson's assertion, Plaintiff stated, "That's bullshit. It's absolute bullshit." *Id.* at 7:53. Plaintiff proceeded to be loud and argumentative with Defendant Richardson, who paused the hearing in response to Plaintiff's behavior. *Id.* Plaintiff was subsequently removed from the hearing. Disciplinary Hearing at 00:22 (Dkt. 88-5, File Name "J. Rader-0529-cont"). Defendant Richardson resumed the hearing in Plaintiff's absence and found him guilty of the No. 201A charge. *Id.* at 1:20.

Defendant Richardson subsequently charged Plaintiff with Disciplinary Offense No. 222, associated with using vulgar or insolent language. Richardson Aff. ¶ 6. Hearings Officer Johnson conducted Plaintiff's disciplinary hearing for this offense on July 8, 2020. *Id.* During the hearing, Plaintiff argued that the charged offense code requires abusive language to be directed "at" an officer and that his use of the word "bullshit" did not satisfy that standard. Disciplinary Hearing at 8:15 (Dkt. 88-5, File Name "LCC-2020-0552"). Hearings Officer Johnson ultimately found Plaintiff guilty of the offense. *Id.* at 16:00. Plaintiff responded, "Of course you are! You're a brilliant woman—of course you're finding me guilty because you don't know 222 either!" *Id.* Plaintiff continued, "I'm gonna win [my appeal]. Nanny nanny booboo! You're such a brilliant person, aren't ya?" *Id.* at 16:25. Plaintiff later appealed Hearings Officer Johnson's decision, which was upheld first by Ms. Gregg, a prison employee, and later by Defendant Warden Bailey. Dkt. 88-6 ("Bailey Aff.") ¶¶ 5–6.

On February 27, 2021, Defendant Jones approached Plaintiff and another inmate and instructed them to wear their masks and to stand at least six feet from each other. Jones Aff. ¶ 6. The other inmate, Mr. Phelps, promptly complied with Defendant Jones' order, but Plaintiff did

not. *Id.* Consequently, after Defendant Jones returned and found that Plaintiff had not complied, he wrote Plaintiff up for a disciplinary charge for disobeying a direct order. *Id.*

Defendant Richardson conducted the disciplinary hearing for Plaintiff's February 27 charge on March 22, 2021. Richardson Aff. ¶ 8. After discovering that Plaintiff wished to view the relevant video footage, Defendant Richardson paused the audio recording to allow Plaintiff to do so. *Id.* ¶ 10; Disciplinary Hearing at 6:00 (Dkt. 88-5, File Name "2021-0179"). After Defendant Richardson restarted the hearing, Plaintiff grieved the fact that he had been allowed to review less than all available camera angles and argued that the evidence showed that Defendant Jones had never addressed him. *Id.* at 6:35. He stated that he was unaware that Defendant Jones had been speaking to him and that, had he known of Defendant Jones' command, Plaintiff would have asked why he was now required to wear a mask because inmates had not previously been required to wear masks in that part of the prison. *Id.* at 7:25. Plaintiff also stated that he did not know whether he would have complied with an order to wear his mask. *Id.* at 9:45. Defendant Richardson found Plaintiff guilty of the charge and imposed a $6.00 fine. *Id.* at 30:30; Richardson Aff. ¶ 12.

## C.   **Alleged Book Confiscation**

On November 30, 2020, Plaintiff notified LCC mailroom staff that he was expecting to receive a book entitled, "The Hearsay Handbook." TAC at 18–19. Two prison officers later informed Plaintiff that the book had been confiscated because a canine had detected a synthetic marijuana scent emanating from the book. *Id.* Defendant Holmes attests that she does not recall confiscating Plaintiff's book but suggests that it is possible the book was never delivered to Plaintiff because it had not been sent through LCC's approved vendor, contrary to VDOC rules. Holmes Aff. ¶ 12.

D.   **Access to Counsel, Access to the Law Library, and Harassment**

On December 31, 2020, Plaintiff requested a privileged phone call with his court appointed attorney. TAC at 19. The request was "re-routed" to Defendant Holmes on January 6, 2021. *Id.*; Holmes Aff. ¶ 8. In response, Defendant Holmes provided Plaintiff with a form to request unmonitored calls with his attorney.[5] *Id.* Plaintiff filed an informal complaint on January 15, 2021, expressing that he requested to speak to his attorney on December 31, 2020 but had not yet been able to do so. *Id.* ¶ 9. Defendant Holmes responded, stating that she received Plaintiff's request for a private phone call on January 19, 2021 and that any calls from Plaintiff's attorney would be unmonitored as of January 21, 2021. *Id.* On January 29, 2021, Plaintiff filed a regular grievance, complaining that his request for a privileged phone call had been ignored. *Id.* The response to Plaintiff's grievance noted that GTL, the facility telephone provider, had blocked monitoring of calls from Plaintiff's attorney as of January 21, 2021. *Id.*

Per VDOC OP 866.34, *pro bono* court-appointed attorneys must be permitted to contact an inmate through the administrative telephone system whenever a court provides the facility with a copy of an order, which includes the attorney's contact information. Dkt. 100 at 20. Defendant Holmes did not receive notification from a court or from Plaintiff's attorney that a telephone conference had been requested as dictated by the policy. *Id.* Rather, Plaintiff himself wished to initiate the call from the privacy of a counselor's office. *Id.*

On January 24, 2022, Plaintiff filed an informal complaint stating that he had a court filing deadline of February 3, 2022 and therefore needed access to the law library. TAC at 22–23; Dkt. 100 at 43. Defendant Holmes responded on February 3rd, citing the VDOC's January 4, 2022

---

[5] Plaintiff suggests that he did not receive a response to his request until January 25, 2021. *See* TAC at 19. Defendant Holmes attests that she answered the request on January 13, 2021. *See* Holmes Aff. ¶ 8.

memo regarding the temporary suspension of in-person law library access.  Holmes Aff ¶ 11.
Defendant Holmes added that Plaintiff was free to request legal materials, which a law clerk could
provide.  *Id.*

Plaintiff was released from the custody of the VDOC on October 17, 2022.  Dkt. 69.

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving
party," and "[a] fact is material if it might affect the outcome of the suit under the governing law."
*Variety Stores v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration in original)
(quoting *Jacobs v. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015)).  Once the moving
party files a motion for summary judgment, the nonmoving party must "show that there is a
genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible
evidence[.]'"  *Id.* (alteration in original) (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d
208, 216 (4th Cir. 2016)).  In evaluating a motion for summary judgment, a district court must
consider the evidence in the light most favorable to the nonmoving party and draw all reasonable
inferences from the facts in favor of that party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655
(1962).

## III.  Analysis

Following the Court's disposal of several claims in response to Defendants' Motion to
Dismiss, *see* Dkt. 75, ten claims remain active:[6]

---

[6] In his Opposition, Plaintiff "does not stipulate that Defendants have accurately interpreted or
listed" his claims in the TAC. Dkt. 93 at 1.  Rather than provide his own list of claims, Plaintiff
invites the Court to reconstruct such a list by consulting his TAC.  *Id.*  In response, Defendants

**Claim 2:**     Defendants Winslow, Harrison, and Coleman retaliated against Plaintiff by denying him access to the grievance process.

**Claim 3:**     Defendants Winslow, Harrison, Richardson, and Holmes retaliated against Plaintiff for his decisions to exercise his First Amendment rights.

**Claim 4(a):**  Defendant Holmes retaliated against Plaintiff by confiscating a legal book sent to Plaintiff in the mail and by placing Plaintiff's attorney on a block list.

**Claim 4(b):**  Defendant Holmes violated Plaintiff's Sixth Amendment rights by denying Plaintiff a call with his attorney and by placing his attorney on a block list.

**Claim 6:**     Defendants Winslow, Harrison, Jones, and Richardson retaliated against Plaintiff by writing false disciplinary reports about him.

**Claim 7:**     Defendant Richardson retaliated against Plaintiff by denying him the ability to call witnesses and present documentary evidence during a disciplinary hearing.

**Claim 8:**     Defendant Bailey retaliated against Plaintiff by upholding an incorrect disciplinary conviction on appeal.

**Claim 9(a):**  Defendants Richardson and Holmes retaliated against Plaintiff by overlooking that Plaintiff's disciplinary convictions were based upon insufficient evidence.

**Claim 9(b):**  Defendant Holmes violated Plaintiff's right to due process by overlooking that Plaintiff's disciplinary convictions were based upon insufficient evidence.

**Claim 14:**    Defendant Holmes harassed Plaintiff on January 24, 2022.

*See id.*; Dkt. 88 at 1–2.

In addition to these claims, Plaintiff seeks injunctive relief in multiple forms without identifying a legal basis for doing so. *See, e.g.*, TAC at 27 ("An injunction against Defendant Warden Bailey and Defendant B.L. Holmes ordering them to immediately open the LCC Law

---

request dismissal of the TAC on the basis that it violates Federal Rule 8 of Civil Procedure. *See* Dkt. 103 at 7–9. Although Defendants are correct that the TAC requires consultation of documentary exhibits to fully understand, it is not so out of compliance with the Federal Rules to warrant dismissal, particularly when one considers that Plaintiff is a *pro se* litigant. *See Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) ("We read the pleadings of a pro se plaintiff liberally[.]"). In examining the TAC, the Court concludes that Plaintiff has failed to describe any appreciable difference in his claims as compared to the claims summarized by Defendants. Consequently, the Court adopts Defendants' proposed list of claims.

Library regardless of COVID-19 or inmate vaccination status[.]").  Because Plaintiff has been released from prison, any request for injunctive or declaratory relief is now moot, and the Court does not need to address those requests.[7] *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release . . . moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

## A.    First Amendment Retaliation Claims

The majority of Plaintiff's claims are predicated on alleged retaliation for exercising his First Amendment rights.  To succeed on a First Amendment retaliation claim, a plaintiff must establish that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.  *Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020).  With respect to causation, the Fourth Circuit employs a burden-shifting framework under which a prisoner-plaintiff must show that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action[.]"  *Id.* at 300; *see, e.g., Harvey v. Hobbs*, No. 1:20-cv-605, 2022 WL 980846, at *24 (E.D. Va. Mar. 29, 2022) (denying a motion to dismiss a First Amendment retaliation claim where the prisoner-plaintiff alleged that prison officers moved him to a more dangerous unit in retaliation for his filing grievances against them).  "Absent direct evidence of a link, plaintiffs seeking to establish such a

---

[7] Plaintiff suggests that an exception to the mootness doctrine—known as the "wrongs capable of repetition yet evading review" exception, *see Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021)—applies due to the fact that he could "unintentionally violate the terms of his probation" and be reincarcerated, *see* Dkt. 93 at 7–8.  This argument is not persuasive because Plaintiff has the power to choose not to violate the terms of his probation. *Cf. Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) ("For us to find the exception for cases 'capable of repetition, yet evading review' applicable here, then, we would have to forecast bad behavior on Incumaa's part.  We surely cannot base our mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules.").

causal link 'must at least show (1) that the defendant had knowledge of the plaintiff's protected conduct, and (2) that there was temporal proximity between the protected conduct and the adverse action.'" *Momolu v. Clarke*, No. 3:18-cv-311, 2021 WL 885590, at *10 (E.D. Va. Mar. 9, 2021) (quoting *Haendel v. Va. Dep't of Corr.*, 2020 WL 7018564, at *9 n.12 (W.D. Va. Nov. 30, 2020)). If a plaintiff satisfies this standard, the burden shifts to the defendant to prove a permissible basis for taking the action at issue. *Id.* The Court now addresses the claims in turn.

1.   *Denying Access to Grievance Process (Claim 2)*

Claim 2 reads: "Defendants Winslow, Harrison, and Coleman violated Plaintiff's rights under the First Amendment by denying him access to the grievance process." Dkt. 74 at 5. But in addressing the previously filed Motion to Dismiss, the Court observed that Plaintiff was not seeking relief from Defendants Winslow, Harrison, and Coleman for a literal denial of access to the grievance procedure and that, instead, Plaintiff's claim was "akin to . . . [a] retaliation claim[.]" *Id.* at 12. The Court thus allowed Claim 2 to proceed on that basis. *Id.*

The parties' additional briefing at the summary judgment stage convinces the Court that Claim 2 is repetitive of Plaintiff's other claims. In his Opposition, Plaintiff "stipulates that no Officers at [LCC] ever physically denied Plaintiff[']s ability to receive and write Grievances." Dkt. 93 at 2. Rather, Plaintiff argues that he has attempted to provide evidence "proving that within days of Plaintiff submitting a Grievance Form(s) about specific LCC Officer(s), said LCC Officer(s) would file meritless and false institutional charges against Plaintiff." *Id.* This theory of retaliation has been more clearly invoked in Plaintiff's other claims, which the Court addresses below. Consequently, the Court dismisses Claim 2.

2.    *First Amendment Rights (Claim 3)*

The Court dismisses Claim 3 for similar reasons.  Defendants assert that this claim only "generally alleges" that Defendants Winslow, Harrison, Richardson, and Holmes violated Plaintiff's right to be free from retaliation and that Claims 4, 6, 7, and 9(a) provide specific factual bases supporting that theory.  Dkt. 88 at 18.  Defendants therefore request that the Court dismiss Claim 3 and assess Plaintiff's more specific claims in its place.  *Id.*  In his Opposition, Plaintiff argues that "Defendants once again are trying to misconstrue [his] retaliation argument[,]" Dkt. 93 at 8–9, but offers no explanation for his argument that consideration of Claims 4, 6, 7, and 9(a) is insufficient to ensure that Plaintiff's retaliation arguments are fully examined.  The Court will therefore dismiss Claim 3 and proceed to consider Plaintiff's factually developed claims.

3.    *Book Confiscation (Claim 4(a))*

Plaintiff asserts that Defendant Holmes retaliated against him by confiscating a book, "The Hearsay Handbook," mailed to him in December 2020.  TAC at 18–19.

Plaintiff filed this civil action in November 2020 and Defendant Holmes was named as a party in the original Complaint.  *See* Dkt. 1.  Because filing a civil complaint is a protected First Amendment activity, Plaintiff has satisfied the first element of a retaliation claim.

With respect to the second element of a retaliation claim, confiscation of Plaintiff's property could satisfy the "adverse action" element of a retaliation claim.  *See Bell v. Johnson*, 308 F.3d 594, 604–05 (6th Cir. 2002) (concluding that determining whether two harassing cell searches and confiscation of material "would deter a person of ordinary firmness" from exercising his First Amendment rights was a jury issue).  Here, a dispute of fact exists as to whether Defendant Holmes confiscated Plaintiff's book.  In the sworn TAC, Plaintiff claims that several prison officials confirmed that Defendant Holmes had taken his book because it "was laced with synthetic

13

marijuana." TAC at 19. Defendant Holmes asserts that she does not recall confiscating Plaintiff's book and speculates that the book was taken pursuant to VDOC policy. Holmes Aff. ¶ 12.

Finally, the temporal proximity between the filing of this lawsuit and Defendant Holmes' alleged confiscation of Plaintiff's book satisfies the causation element of Plaintiff's retaliation claim. *See Gregg-El v. Doe*, 746 F. App'x 274, 275 (4th Cir. 2019) (per curiam) ("[T]emporal proximity . . . may support an inference of causation." (citing *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015))).

Because there is a dispute of fact with respect to the "adverse action" element of Plaintiff's retaliation claim, the Court denies Defendant Holmes' Motion for Summary Judgment with respect to Claim 4(a).

   4.   *False Disciplinary Reports (Claim 6)*

Plaintiff asserts that Defendants Jones, Winslow, Harrison, and Richardson retaliated against him by writing false disciplinary charges about him. TAC at 12–14, 24–25, 29.

With respect to Defendant Jones, Plaintiff claims that Defendant Jones wrote a false disciplinary charge against him on February 22, 2021, asserting that Plaintiff failed to wear a mask and maintain proper social distance between himself and another inmate. *Id.* at 29. Having reviewed the record, the Court determines that no evidence of any First Amendment activity exists that could have motivated Defendant Jones to retaliate against Plaintiff. Defendant Jones was not the target of any informal complaints or grievances before he issued his allegedly false disciplinary charges and was not a party to this lawsuit until the TAC was filed, which occurred almost one month after the incident at issue. *Cf. Dougherty v. Virginia*, 2013 WL 750140, at *6 (W.D. Va. Feb. 27, 2013) (dismissing retaliation claim after finding that "the incidents mentioned as

retaliatory had causative factors unrelated to" the plaintiff's lawsuit and that plaintiff had therefore not shown that "his exercise of constitutional rights motivated [the defendant's] adverse actions").

Plaintiff fails to identify another possible basis for finding Defendant Jones possessed a retaliatory motive and instead insists that there was no factual basis for the issued charges.[8] Consequently, the record fails to support the argument that Plaintiff's "exercise of constitutional rights motivated any of the adverse actions of which he complains[,]" and the Court will enter judgment in Defendant Jones' favor as to Claim 6.

With respect to Defendant Winslow, Plaintiff seeks relief on the basis that Defendant Winslow's April 15, 2020 disciplinary charge, asserting Plaintiff told Defendant Winslow he needed to wear his mask, was false. TAC at 24–25. Plaintiff disputes having yelled or cursed at Defendant Winslow but states that he "politely asked" Defendant Winslow to wear a mask when Defendant Winslow approached him. *Id.* at 10–11. Several hours after this incident, Plaintiff claims that Defendant Winslow charged him with "disrupting count[.]" *Id.*

The dispute of fact concerning the manner in which Plaintiff addressed Defendant Winslow prevents entry of summary judgment in Defendant Winslow's favor. If the parties' interaction occurred as Defendant Winslow asserts, he would likely prevail because verbal abuse of a prison guard is not protected speech, and thus, no retaliation could have occurred as a matter of law. *See, e.g.*, *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) ("I know of no case law that would support a conclusion that such [abusive] speech or conduct *against a prison guard* is protected by the First Amendment."). But if the interaction occurred as Plaintiff submits, a valid

---

[8] For this reason, Plaintiff may have been seeking relief against Defendant Jones for the filing of false disciplinary charges, not because he believed those charges to have been issued in retaliation of a previous act. There would be no legal basis for such a claim, as, standing alone, "a false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (per curiam).

retaliation claim could exist because having a simple conversation with a guard—at least at approved times—is protected First Amendment activity. *See Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298 (3d. Cir. 2016) ("[W]e are not persuaded that an oral grievance should not receive constitutional protection solely because it is lodged by a prisoner as opposed to a civilian."). Accordingly, the Court denies Defendant Winslow's Motion for Summary Judgment as to Claim 6.

Concerning Defendant Harrison, there is no dispute that Plaintiff filed grievances against Defendant Harrison on June 2 and 7, 2020, claiming that Defendant Harrison was not wearing her mask while serving food. TAC at 12–13. There is also no dispute that Defendant Harrison filed a disciplinary charge against Plaintiff on June 12, 2020, days after Plaintiff's second grievance. Harrison Aff. ¶ 4. A dispute does exist as to whether Plaintiff knowingly disobeyed Defendant Harrison's order to file a request before entering the dorm foyer, which was the basis for Defendant Harrison's charge against him. *Compare* Harrison Aff. ¶ 4, *with* TAC at 13. Because both Plaintiff's and Defendant Harrison's intent for their actions are not clear from the record, the Court must deny summary judgment as to this claim.[9]

With respect to Defendant Richardson, Plaintiff asserts that Defendant Richardson wrote a false charge under Disciplinary Offense No. 222 for Plaintiff's use of the term "bullshit" during a disciplinary hearing regarding a separate offense. *Id.* at 14. There is no evidence that Plaintiff

---

[9] Defendant Harrison is not insulated from potential liability because Plaintiff was found guilty of the charge in question. *See Watson v. Rozum*, 834 F.3d 417, 426 (3d Cir. 2016) ("[A] plaintiff can make out a retaliation claim even though the charge against him may have been factually supported."); *Bruce v. Ylst*, 351 F.3d 1283, 1289–90 (9th Cir. 2003) ("[P]rison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, where there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right.").

interacted with Defendant Richardson before the hearing in question. Thus, to succeed on his claim, Plaintiff must demonstrate that his use of the term "bullshit" constituted protected speech; if he cannot, then a retaliation claim against Defendant Richardson must fail.

In his filings, Plaintiff suggests that he used the term "bullshit" to describe "the hearing" generally. *See* TAC at 15. He reasons that his description of the hearing as "bullshit" does not satisfy Disciplinary Offense No. 222's requirements because Disciplinary Offense No. 222 requires an inmate to use "vulgar or insolent language . . . directed towards an employee[.]" *Id.* at 14. However, the disciplinary hearing's audio recording disproves Plaintiff's version of events. In the hearing, Defendant Richardson disputed Plaintiff's account of events and stated that, while in the control booth, she had been able to hear inmates on the pod floor and had been able to hear officers in the booth while on the pod floor. Disciplinary Hearing at 7:44 (Dkt. 88-5, File Name "J. Rader-0529"). In response, Plaintiff stated, "That's bullshit. It's absolute bullshit." *Id.* at 7:53. Plaintiff proceeded to be loud and argumentative with Defendant Richardson, who paused the hearing in response to Plaintiff's behavior. Disciplinary Hearing at 00:22 (Dkt. 88-5, File Name "J. Rader-0529-cont").

Consequently, the record makes clear that Plaintiff was not calling the hearing "bullshit" but rather, was stating that he believed the hearing officer's version of events was "bullshit," insinuating that Defendant Richardson was being dishonest. The Court concludes that these words, which were profane and impugned Defendant Richardson's honesty, did not constitute protected speech. *See, e.g., Jermosen v. Coughlin*, 878 F. Supp. 444, 449, 450 (N.D.N.Y. 1995) (noting that abusive language is not protected under the First Amendment). Consequently, Plaintiff's retaliation claim is without basis, and judgment will enter on Defendant Richardson's behalf.

5.   _Denying Access to Video Evidence and Testimony Presentation (Claim 7)_

Plaintiff claims that Defendant Richardson retaliated against him by denying him the opportunity to view video evidence or present witness testimony at his March 22, 2021 disciplinary hearing. TAC at 20–21. This claim lacks any factual basis. The disciplinary hearing's audio recording reveals that Defendant Richardson read LCC officials' written responses to Plaintiff's questions into the record and informed Plaintiff that the two inmate witnesses he wished to call refused to testify. Dkt. 88-5, File Name "LCC-2021-0179." Defendant Richardson also allowed Plaintiff to watch video footage of the events underlying his disciplinary charge, even though Plaintiff filed the incorrect paperwork to request access to the video footage. _Id._ For these reasons, judgment will enter in Defendant Richardson's favor as to Claim 7.

6.   _Upholding a Disciplinary Conviction (Claim 8)_

Plaintiff asserts that Defendant Bailey retaliated against him by upholding the disciplinary conviction Defendant Richardson entered against him on July 8, 2020. TAC at 21. As explained above, a factual basis existed for issuance of Disciplinary Offense No. 222 against Plaintiff, namely his decision to call a hearing officer's words "bullshit." Consequently, Plaintiff's being found guilty and Defendant Bailey's upholding of that conviction were based in fact and do not entitle Plaintiff to relief. The fact that Defendant Bailey knew that Plaintiff had filed grievances against him and other LCC employees is insufficient to sustain Plaintiff's claim, given the merit of the disciplinary charge filed against him. _Cf. Pevia v. Hill_, 2023 WL 2664230, at *8 (D. Md. Mar. 28, 2023) (finding that the plaintiff's professed guilt of a disciplinary offense proved that the defendant "would have issued the [violation] notice based on the perceived rule violation even if [the plaintiff] had not filed suit against him" and thus, the retaliation claim failed); _Crawley v. Kanode_, 2022 WL 963978, at *7 (W.D. Va. Mar. 30, 2022) ("Crawley's disagreement with

Warden Kanode's decision to uphold the conviction does not make the decision biased, retaliatory, or part of a conspiracy."); *Riddick v. Kiser*, 2021 WL 4484578, at *10 (W.D. Va. Sept. 30, 2021) (finding that the defendant's decision to uphold a disciplinary conviction did not support a First Amendment retaliation claim because the plaintiff "does not identify, nor can the court find, any constitutionally protected right that he enjoyed allowing him, without consequence, to refuse to comply with prison officials' orders"). For this reason, judgment will enter in Defendant Bailey's favor as to Claim 8.

       7.     *Overlooking Insufficient Evidence (Claim 9(a))*

Plaintiff asserts that Defendants Richardson and Holmes retaliated against him by finding him guilty at disciplinary hearings despite there being insufficient evidence to do so. TAC at 25–26. With respect to Defendant Richardson, the claim focuses on the disciplinary hearing on June 23, 2020. *Id.* at 26. At that hearing, Defendant Richardson adjudicated Defendant Harrison's offense report from June 12, 2020, which charged Plaintiff with disobeying a direct order—namely, her order to Plaintiff to write a request before attempting to see Counselor Coleman. *Id.* at 13–14. With respect to Defendant Holmes, Plaintiff's claim focuses on the disciplinary hearing on April 22, 2020. *Id.* at 25. At that hearing, Defendant Holmes adjudicated Defendant Winslow's offense report from April 15, 2020, which charged Plaintiff with disrupting count by yelling, "You need to be wearing your fucking mask." *Id.* at 10–11.

Although the TAC alleges that Plaintiff began filing informal complaints and grievances at LCC on April 16, 2020, *see id.* at 11—a date preceding both of these disciplinary hearings—the Court cannot identify specific First Amendment activity that could have inspired Defendants to retaliate against Plaintiff. Accordingly, the record fails to support the claim that Plaintiff's "exercise of constitutional rights motivated any of the adverse actions of which he complains,"

and the Court is thus constrained to enter judgment in Defendants' favor as to Claim 9(a). *Dougherty*, 2013 WL 750140, at *6.

**B.      Sixth Amendment Claim (Claim 4(b))**

Plaintiff asserts that Defendant Holmes violated his Sixth Amendment rights by denying him a privileged phone call with his appellate attorney on December 31, 2020.  TAC at 28.

The record reflects that Plaintiff was not denied a private phone call with his attorney. Rather, in response to Plaintiff's request, Defendant Holmes provided Plaintiff a form through which he could arrange to have incoming phone calls free from monitoring and recording.  *Id.* at 19; Holmes Aff. ¶ 8.  That Plaintiff did not avail himself of this opportunity is not Defendant Holmes' fault and does not constitute a Sixth Amendment violation.

Even if Defendant Holmes had denied Plaintiff a private phone call as he requested, standing alone, this would not amount to a constitutional violation.  Although prisoners have the right to assistance of counsel for their criminal trials and appeals, they "do not have a right to any particular means of access, including unlimited telephone use." *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992).  Here, the TAC does not allege, and the record does not support, that Plaintiff was unable to contact his attorney by other means, such as written correspondence, if speaking to his attorney over the phone was unsatisfactory.  Consequently, there is no basis on which any reasonable fact finder could conclude that Defendant Holmes violated Plaintiff's Sixth Amendment rights. *Cf. United States v. Lentz*, 419 F. Supp. 2d 820, 835 (E.D. Va. 2005) (holding that a practice of recording and monitoring all inmate telephone calls does not violate Sixth

Amendment rights where inmates "have at least two effective avenues of communicating confidentially with counsel—mail and in-person conferences").[10]

## C.    Due Process Claim (Claim 9(b))

Plaintiff seeks relief from Defendant Holmes[11] for wrongly finding him guilty at the April 22, 2020 disciplinary hearing. *See* TAC at 11.  He argues that Defendant Holmes lacked sufficient evidence to convict him and did not allow him to rely on video evidence to prove his innocence.[12]   *Id.*; Dkt. 93 at 13–14 (suggesting that Defendant Holmes "railroad[ed]" his disciplinary hearing).

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law."  *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).  An inmate demonstrates a protected interest by showing the imposition of an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

---

[10]  Plaintiff's Opposition includes additional allegations, including claims that inmates are traditionally allowed to use the telephone in a counselor's office when they wish to speak to their attorneys and that Defendant Holmes ignored prison counselors' urgings to respond to Plaintiff's phone call request. *See* Dkt. 93 at 5–6.  The Court cannot consider these belated allegations because it is improper to amend a complaint through briefing. *See Hurst v. District of Columbia*, 681 F. App'x 186, 194 (4th Cir. 2017). In addition, because the Opposition is not sworn, the Court cannot consider its assertions as though they were made in an affidavit. *See, e.g., United States v. White*, 366 F.3d 291, 300–01 (4th Cir. 2004).

[11]  The Court dismissed Plaintiff's due process claims against Defendants Richardson and Bailey pursuant to the doctrine espoused in *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny. *See* Dkt. 74 at 14–15.

[12] Plaintiff alleges that he was found guilty at his disciplinary hearing "in lieu of video evidence[.]" TAC at 11. The Court presumes that Plaintiff asserts that he was unable to present video evidence at his hearing, not that he was found guilty in place of video evidence.

Here, the sole penalty imposed on Plaintiff was a $5.00 fine. Holmes Aff. ¶ 5. Such a minimal fine does not implicate a constitutionally protected property or liberty interest. *See, e.g.*, *Gethers v. Clarke*, No. 1:23-cv-426, 2023 WL 7094557, at *3 (E.D. Va. Oct. 26, 2023) ("The $2.00 disciplinary fine at issue here does not establish a constitutionally protected interest because the Fourteenth Amendment protects only those property interests that are not *de minimis*."); *Proctor v. Hamilton*, No. 1:19-cv-275, 2021 WL 67353, at *3 (E.D. Va. Jan. 7, 2021) (finding that a $10 fine was "insufficient to give rise to a protected" interest). *But see Bowling v. Clarke*, 2020 WL 4340944, at *5 (W.D. Va. July 28, 2020) ("Arguably, . . . the imposition of [a $15] fine, which was deducted from [the plaintiff's] inmate account after an allegedly defective disciplinary hearing, constituted the deprivation of a protected property interest without due process.").

Consistent with this district's case law, the Court concludes that Plaintiff's $5.00 fine did not amount to an "atypical and significant hardship" that triggered due process protections. Thus, the Court declines to assess the sufficiency of the process afforded to Plaintiff at his March 22, 2021 disciplinary hearing and enters judgment on Defendant Holmes' behalf as to this claim.

## D.    Harassment (Claim 14)

Finally, Plaintiff seeks relief based on alleged harassment by Defendant Holmes on January 24, 2022. TAC at 29. In his Opposition, Plaintiff states that he "defer[s] to the experience and wisdom of this court about when harassment and retaliation differ" and whether "they are mutually exclusive in this case[.]" Dkt. 93 at 14. Defendants and the Court have construed this claim as seeking relief for harassment, not retaliation, because Plaintiff's TAC framed the claim in this manner. *See* TAC at 29 (seeking damages against "Defendant B.L. Holmes for intentional

infliction of emotional distress and/or harassment on . . . January 24, 2022").[13]  Plaintiff has

specifically sought relief for Defendant Holmes' alleged retaliation on other, specific bases, and

the Court has assessed those claims independently.

The record supports entry of judgment in Defendant Holmes' favor as to a harassment

claim.  Any such claim would be predicated on Defendant Holmes' response to Plaintiff's

grievance regarding accessing the LCC law library before his February 3, 2022 state court

deadline.  *See id.* at 22–23.  In Defendant Holmes' response to Plaintiff's written complaint,

Defendant Holmes wrote:

> In efforts to control and contain spread of covid a memo was posted regarding
> physical access to the law library.  You were provided opportunity to submit your
> request for information needed + the clerk would pull the information.  Your Legal
> mail pickup is in a separated office and your time spent in that office is lesser than
> that of being in the Law Library to research.  This is why you are able to get mail
> and [illegible] law material as the area is not one that you would enter and exit
> quickly out of.

Dkt. 100 at 43.

Defendant Holmes' written response did not contain any verbal abuse or harassment.  Even

if it did contain "verbal abuse"—a description no reasonable person would offer—verbal abuse by

prison officials does not amount to a constitutional violation actionable under § 1983.  *See Henslee*

*v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (affirming dismissal of an inmate's claim alleging

that a jail employee incited other inmates to attack him but failing to allege any actual physical

attack).  To the extent Plaintiff seeks relief under state law, the Court is unable to identify any tort

of harassment that might entitle him to relief.

---

[13] The Court previously dismissed any intentional infliction of emotional distress claims raised in
the TAC but directed Defendants to respond to the remaining harassment claim. *See* Dkts. 74–75.

## IV.  Conclusion

Genuine disputes of material fact prevent entry of summary judgment with respect to Claim 4(a) against Defendant Holmes and Claim 6 against Defendants Winslow and Harrison.  No injunctive relief is available to Plaintiff due to his release from incarceration, and it appears that any possible monetary damages are minimal.  Thus, this matter should be easily resolved without further litigation and will be referred to a magistrate judge for settlement discussions if the parties do not reach a settlement within thirty days.

Entered this __27th__ day of February 2024.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge

24